644 So.2d 1079 (1994)
Sharon CHATELAIN, et al.
v.
CIRCLE K CORPORATION.
No. 94-CA-0227.
Court of Appeal of Louisiana, Fourth Circuit.
October 13, 1994.
*1081 Jerald N. Andry, Gilbert V. Andry, III, Jerald N. Andry, Jr., Jeanne Andry Landry, Andry & Andry, New Orleans, for plaintiffs/appellants.
Diane Kathleen O'Hara, Hulse, Nelson & Wanek, New Orleans, for defendant/appellee.
Before BARRY, LOBRANO and WARD, JJ.
LOBRANO, Judge.
Plaintiffs, Sharon Chatelain and Angella Reynolds, appeal the trial court judgment dismissing their claims against the defendant, Circle K Corporation. We reverse.
On the afternoon of February 14, 1991, Sharon Chatelain drove her automobile into the parking lot of the Circle K convenience store located at 7600 West Judge Perez Drive in Arabi, Louisiana. Chatelain's mother, Angella Reynolds, was a guest passenger in the front seat of Chatelain's automobile. They got out of the car to buy gasoline from Circle K and flowers from a nearby vendor. After purchasing these items, they returned to the car. Before backing her car up to leave the parking lot, Chatelain stated that she looked into her rear view mirrors to make sure that her path was clear. She then moved her car approximately half of a car length out of the parking spot when she suddenly hit something with the rear bumper. Both women testified that the impact caused them to be jolted in their seats. Chatelain and Reynolds got out of the car to inspect and discovered that the car had collided with a concrete foundation approximately sixteen inches high which they later learned was the foundation of a Fotomat business which previously existed at that location.
Chatelain and Reynolds filed suit against Circle K Corporation for injuries allegedly suffered in this accident. Plaintiffs allege that the accident was caused by the negligence of the defendant, and as custodian of a defective thing, citing Civil Code Article 2317. Circle K Corporation, a self-insured corporation, admits that an accident occurred on its property on February 14, 1991 but claimed that the accident was the result of plaintiffs' negligence.
*1082 After trial, the jury found that neither plaintiff was injured in the accident. No other interrogatories were answered. The trial judge then adopted the findings of the jury and rendered judgment in favor of the defendant, dismissing plaintiffs' claims. Plaintiffs now perfect this appeal.
Plaintiffs argue that the jury verdict was clearly wrong because all the medical evidence presented supports the conclusion that the plaintiffs were injured in the accident and that there was no evidence to suggest otherwise. Plaintiffs also argue that the trial court erred in failing to grant their motion for a Judgment Notwithstanding the Verdict (JNOV).
An appellate court may not set aside the trial court's finding of fact in the absence of manifest error or unless it is clearly wrong. Rosell v. ESCO, 549 So.2d 840 (La. 1989).[1] Because the only factual determination made by the jury concerned plaintiffs' lack of injuries, we initially review the trial testimony to determine if that finding is clearly wrong.
Sharon Chatelain testified that after the impact, she immediately had neck pain and a headache. Her neck and head pain became more severe that night. On the day after the accident, she visited James Shoemaker, a chiropractor. He treated her for the injuries on two occasions. She then visited Dr. John Olson, a neurologist. Dr. Olson examined her and prescribed her pain medication. She received physical therapy at St. Bernard Clinical Services for twelve weeks. She also visited Dr. Carl Culicchia, a neurosurgeon, at the request of the defense.
Chatelain stated that her injuries have improved since the accident and that she was only having occasional neck and head pain at the time of trial. She stated that she experienced pain in these areas on a daily basis for four to six months after the accident.
Chatelain testified that she has diabetes and that her injuries have caused problems with her condition. She also stated that she was very active before the accident but her injuries forced her to curtail many of her activities, including housecleaning, yard work, caring for her two young children and riding and caring for her horses. As her injuries improved, she was able to resume some of these activities. She was able to resume her hobby of horseback riding six months after the accident. She was also able to go on vacation trips in 1991 and 1992.
Angella Reynolds testified that at the moment the accident occurred, she "felt a click, like something cracked." She did not have immediate pain but had head and neck pain later that night. She went to see her cardiologist who she saw on a regular basis. He prescribed pain medication for her. One week after the accident, she visited Dr. Olson who prescribed pain medication and physical therapy. She received physical therapy for approximately eight weeks. She stated that she had neck and head pain on a daily basis for approximately six months after the accident. She also consulted another neurologist, Dr. Bruce Lepler, for a second opinion. She was also examined by Dr. Culicchia at the request of the defense. Reynolds also sought chiropractic treatment from James Shoemaker. At trial, she stated that she still has daily pain from her injuries although it was less severe than right after the accident. She testified that since the accident, she has had to curtail many of her activities including babysitting her grandchildren, performing community service work, housecleaning, and helping her daughters care for their horses.
Dr. John Olson, a neurologist, treated Sharon Chatelain one week after the accident. She complained of neck pain which she said began after the accident. His initial diagnosis was that Chatelain had suffered a soft tissue cervical injury which caused neck pain and headaches. He prescribed pain medication for Chatelain and advised her to continue receiving treatment from a chiropractor. Dr. Olson stated that Chatelain was still under his care at the time of trial and that she continued to have complaints of neck pain, headaches and radiation of pain into her shoulders. He stated that Chatelain's healing capacity is impaired because of her diabetic *1083 condition. Dr. Olson's opinion was that, based on Chatelain's history, her injuries are a result of the automobile accident of February 14, 1991. He also stated that she will probably need future treatment and physical therapy for her injuries.
Dr. Olson testified that he initially treated Angella Reynolds on February 20, 1991 for complaints of injuries suffered in the accident. She complained of neck pain with radiation into the right shoulder and severe headaches. His initial diagnosis was that she had nerve root damage in her neck at the C6 level. An MRI scan was taken of her cervical spine which showed a small epidural defect at the C5-6 level. On the basis of his examination and diagnostic testing, Dr. Olson's opinion was that Reynolds had a damaged or ruptured disc. Dr. Olson held this opinion despite the fact that the radiologist who interpreted the MRI did not find evidence of disc prolapse or herniation. He also felt that the type of headaches Reynolds suffered after the accident were related to her neck injury. Dr. Olson's opinion is that, based on her history, Reynolds' neck injury was a direct result of the February 14, 1991 accident. His opinion is also that Reynolds will continue to have headaches and neck pain. However, he said that he would not recommend surgery. Reynolds was still being treated by Dr. Olson at the time of trial.
Dr. Carl Culicchia, a neurosurgeon, performed a medical evaluation of Sharon Chatelain on August 18, 1992. She complained of headaches and neck pain as a result of the automobile accident of February 14, 1991. He obtained a medical history from her and performed a neurological examination which was normal. Dr. Culicchia's opinion was that Chatelain's headaches were not caused by neck pain but were of vascular origin. However, Dr. Culicchia also testified that, based on the data available to him, it was his opinion that Chatelain's symptoms were related to the February 14, 1991 accident but that these symptoms were not caused by any neurological injury.
Dr. Culicchia also performed an evaluation of Angella Reynolds on August 18, 1992. She was fifty-six years old at the time of the examination and her chief complaints were headaches and low back pain. Her neurological examination was normal. He reviewed the MRI of her cervical spine and concluded that she had suffered no neurological injury and had no functional disability. He agreed with the radiologist's conclusion of posterior extradural or epidural defects at the C5 and C6 levels but he did not feel that these defects were significant. Dr. Culicchia stated that his interpretation of the MRI was that Reynolds did not have a ruptured or herniated disc. He stated that Reynolds did not need surgery. Dr. Culicchia was not asked his opinion as to whether or not Reynolds' injuries were related to the accident.
James Shoemaker, a chiropractor, first treated Sharon Chatelain on February 15, 1991. His opinion was that she had a muscle spasm in the neck and shoulder area. He diagnosed her as having suffered a strain of the neck area, a misalignment of vertebra and cephalalgia or muscle pain and tightness in the neck area which causes headaches. His opinion was that these injuries resulted from the February 14, 1991 accident.
Shoemaker also treated Angella Reynolds beginning on January 23, 1992. She complained of severe headaches and neck and back pain. His diagnosis was that she was suffering from muscle spasm, restricted mobility in the neck, headaches, cervical thoracic sprain, misalignment of cervical vertebra and irritation in the lower back region. Shoemaker's opinion is that Reynolds' neck injuries resulted from the automobile accident of February 14, 1991.
Dr. Bruce Lepler, a neurologist, testified by deposition that he treated Angella Reynolds on May 23, 1991. She complained of chronic headaches and neck pain. Dr. Lepler testified that he was not aware of the accident of February 14, 1991. He performed a neurological examination which was normal. He found no objective signs of muscle spasm.
Although the trial testimony contained conflicting versions as to the extent of each plaintiff's injuries, we conclude that the evidence overwhelmingly indicates that each plaintiff did suffer injuries as a result of the February 14, 1991 accident. No testimony *1084 was presented which contradicted the assertion that the plaintiffs suffered at least minor injuries as a result of this accident. Accordingly, we hold that the jury's finding that plaintiffs were not injured in the accident was clearly wrong and we reverse the trial court judgment dismissing plaintiffs' claims.[2]
When an appellate court finds that a reversible error of law or manifest error of fact was made in the trial court, it is required to determine the facts de novo from the entire record and render a judgment on the merits. Rosell v. ESCO, supra; McLean v. Hunter, 495 So.2d 1298 (La.1986); Gonzales v. Xerox Corp., 320 So.2d 163 (La.1975); Collier v. Southern Builders, Inc., 606 So.2d 885 (La.App. 2nd Cir.1992).

LIABILITY:
For the following reasons, we find that Circle K Corporation was negligent, and that their negligence was a contributing cause of plaintiffs' injuries.
Negligence requires a duty/risk analysis. Basically that analysis requires answering the following inquiries:
1) Was the conduct in question a cause in fact of the resulting harm?
2) What, if any, duties were owed by the respective parties?
3) Were the requisite duties breached?
4) Was the risk, and harm caused, within the scope of protection afforded by the duty breached?

Mart v. Hill, 505 So.2d 1120 (La.1987)
At trial, Nolan Allain, an insurance claims adjuster for Circle K Corporation at GAB Business Services, testified that he went to the accident site five days after the accident. He stated that the concrete foundation which the Chatelain vehicle struck when backing out of the parking lot measured sixteen inches at its highest point.
Diana Ramsey, a claims adjuster in the Circle K unit at GAB Business Services, testified that she investigated the claim and learned that the concrete foundation formerly supported a building which housed a film developing business. The building had been torn down but the protruding foundation had not been removed at the time of the accident. The foundation was subsequently removed in September 1992. Photographs of the concrete foundation introduced at trial show that it was the same color as the parking lot.[3] This obstruction was not marked, fenced, or barricaded.
Based on these facts, we conclude that the defendant was negligent in not removing or barricading the sixteen inch high concrete foundation in its parking lot. Their failure to do so was a cause in fact of the resulting harm to the plaintiffs. Circle K breached a duty owed to plaintiffs and the resulting harm was within the scope of protection afforded by the duty breached.
After reviewing the record, however, we also find that plaintiff Sharon Chatelain was negligent. Although she stated that she was not a frequent customer of the Circle K, Chatelain admitted that she has driven by the Circle K many times each week during the seven years that she has lived in the area. When asked if she saw the concrete foundation when she drove into the parking lot on the day of the accident or when she moved her car that day from the gasoline pumps to the flower stand, she stated that she might have seen it both times. She noted that she might have seen the foundation when she moved her car to the flower stand because she did not hit the foundation at that time. Chatelain also testified that she looked in her rearview mirrors before backing her car out of her parking space but she did not turn her body around to look out *1085 the back window to ensure that her path was clear.
The duty of a backing motorist is one of great care and attention. Ward v. Schwegmann Giant Super Markets, Inc., 538 So.2d 1051 (La.App. 4th Cir.1989). Chatelain's testimony reveals that she did not exercise reasonable care and attention in backing her car out of her parking space without ascertaining if this could be done safely. The concrete foundation was of sufficient size that Chatelain should have seen it as she entered the parking lot and moved her car from one area of the lot to another. We find she was 50% comparatively negligent.
We now assess damages. An appellate court may award damages where the trier of fact erroneously fails to do so, and where the record contains sufficient proof of damages. Daugherty v. Casualty Reciprocal Exchange Insurance Co., 522 So.2d 1323 (La. App. 2nd Cir.1988). In making an initial award of damages at the appellate level, the court is not limited to an award of either the lowest or highest amount which would have been affirmed; instead, the court should set the award in an amount which is just compensation for the damages revealed by the record. Beckham v. St. Paul Fire and Marine Insurance Company, 614 So.2d 760 (La.App. 2nd Cir.1993).

SPECIAL DAMAGES
The plaintiffs introduced bills for past medical expenses totalling $2,800.17 for Sharon Chatelain and $8,779.00 for Angella Reynolds.[4] Because the evidence supports the conclusion that these expenses represent treatment for injuries received in the February 14, 1991 accident, we award these amounts to plaintiffs for past medical expenses.
Although the record included some testimony indicating that plaintiffs may require future medical treatment, no evidence was presented as to estimates of costs of future medical treatment. Therefore, no award will be made to either plaintiff for future medical expenses. See Williams v. Safeco Insurance Company, 490 So.2d 466 (La.App. 4th Cir.1986). Additionally, because neither plaintiff was employed at the time of the accident, there will be no award for lost wages.

GENERAL DAMAGES
Sharon Chatelain stated that she experienced daily neck and head pain for four to six months after the accident. She was only having occasional pain in these areas at the time of trial, two and one-half years after the accident. Her treating physician, Dr. Olson, diagnosed that she suffered a soft tissue cervical injury and that this injury was caused by the automobile accident. Chatelain's injury did not require surgery and she was able to resume many of her daily activities within six months of the accident. Under these circumstances, we believe that an award of $2,500.00 in general damages to Sharon Chatelain is adequate.
Angella Reynolds stated that she experienced severe neck and head pain on a daily basis for six months after the accident. She was still experiencing daily pain in these areas two and one-half years later at the time of trial although she described the pain as less severe at that time than in the first few months after the accident. The opinion of her treating physician, Dr. Olson, was that Reynolds suffered a ruptured disc in her neck and that this injury was caused by the accident. However, there is conflicting testimony on this particular finding, and we conclude there was no disc problem as a result of the accident. Dr. Olson's opinion was also that Reynolds will continue to have headaches and neck pain. However, none of the physicians who examined Reynolds thought that she needed surgery. After reviewing all of the evidence as to Reynolds' injuries, we find that a general damage award of $8,000.00 will adequately compensate her for her pain and suffering.
Accordingly, the trial court judgment dismissing plaintiffs' claims is reversed. We find that plaintiffs sustained the following damages:

*1086
Sharon Chatelain:
 General Damages: $ 2,500.00
 Special Damages: $ 2,800.17
 __________
 Total $ 5,300.17
Angella Reynolds:
 General Damages: $ 8,000.00
 Special Damages: $ 8,779.00
 __________
 Total $16,779.00

We apportion fault for this accident at 50% to Sharon Chatelain and 50% to Circle K Corporation. Accordingly, judgment is rendered in favor of Sharon Chatelain and against Circle K Corporation in the full sum of $5,300.17, plus legal interest and costs, reduced by, Chatelain's 50% comparative fault. Judgment is rendered in favor of Angella Reynolds and against Circle K Corporation in the full sum of 50% of $16,779.00, plus legal interest and costs.[5]
REVERSED AND RENDERED.
NOTES
[1] See, Ambrose v. New Orleans Police Department, 639 So.2d 216 (La.1994) for the latest expression by the Supreme Court on appellate review of facts.
[2] Because we are reversing the trial court judgment, plaintiffs' argument that the trial court erred in denying their motion for judgment notwithstanding the verdict is moot and will not be addressed.
[3] The defendant argues on appeal that the trial court erred in not allowing it to introduce into evidence a videotape of the parking lot which included a replica of the concrete foundation which had been removed. However, the defendant neither appealed nor answered the plaintiffs' appeal. Therefore, this court is precluded from considering issues raised by the defendant. C.C.P. art. 2133; Ward v. Schwegmann Giant Super Markets, Inc., 538 So.2d 1051 (La.App. 4th Cir.1989).
[4] There is a stipulation by plaintiffs' attorney concerning the medical expenses. There is no response or objection by defendant and we assume their authenticity was stipulated to.
[5] Pursuant to Civil Code Article 2324, Circle K is a joint tortfeasor with Mrs. Chatelain, even though Reynolds did not sue Chatelain. Vis-a-vis Reynolds' claim we have quantified the fault of Chatelain. Code of Civil Procedure Article 1812(C)(2) and recent jurisprudence require the quantification of fault of all responsible persons, whether a party to the proceedings or not. Thus in accordance with Article 2324, Circle K is liable for 50% of Reynolds' damages.