657 So.2d 765 (1995)
Charles MATTHEWS,
v.
CONSOLIDATED COMPANIES, INC. d/b/a Conco Food, Old Republic Insurance Company and John Bergeron.
No. 94-CA-2425.
Court of Appeal of Louisiana, Fourth Circuit.
June 29, 1995.
*766 Louis A. Gerdes, Jr., New Orleans, for appellant, Charles Matthews.
W. Paul Andersson, Leake & Andersson, New Orleans, for Appellees, Consolidated Companies, Inc., d/b/a Conco Foods, Old Republic Ins. Co. and John Bergeron.
Before BARRY, BYRNES and WALTZER, JJ.
WALTZER, Judge.

STATEMENT OF THE CASE
Charles Matthews brought suit against Consolidated Companies, Inc. d/b/a Conco Food (Conco), Old Republic Insurance Company and Conco employee John Bergeron, for personal injuries allegedly sustained in a collision between Matthews' taxi cab and a Conco truck driven by Bergeron. Following trial, the jury found that Bergeron was negligent, that his negligence was a proximate cause of the collision, that Matthews was not negligent, and awarded Matthews general damages of $451, past medical expenses of $35,220.99, future lost wages (diminished earning capacity) of $10,000, and nothing for past lost wages. From judgment entered on this verdict Matthews appeals.[1] We amend the judgment of the trial court to resolve the inconsistency between the award of medical expenses and general damages, reverse the jury's award of $10,000 for future lost wages and otherwise affirm.

STATEMENT OF FACTS
On 23 June 1989, Bergeron had just made a delivery for Conco in the first block of Camp Street south of Canal Street, a one-way street having two travel lanes with a parking lane on the left side of the street. His truck was parked with the engine idling in the far left parking lane, the brakes were locked and the engine was not in gear. Matthews' taxi cab was stopped in the left travel lane adjacent to the truck's front wheels in what both Matthews and Bergeron referred to as a "blind spot." Without having ascertained that he could do so safely, Bergeron turned his wheels to the right preparatory to pulling into the left travel lane and struck Matthews' cab, causing minor damage to the door and causing Matthews to strike his head against the dashboard or windscreen.
Matthews, who had a prior history of back injury[2], experienced back symptoms later that week. He underwent chiropractic treatment for about two months, but felt worse. He saw an attorney, who recommended that he see Dr. Seltzer, who treated him with medication and ordered an MRI examination. Seltzer concluded from the MRI that Matthews had a herniation of L5-S1, the lowest back disc. The bottom cartilage fragment was separated from the main portion, demonstrating a herniated disc. Seltzer referred Matthews to Dr. Llewellyn, a neurosurgeon. By then, Matthews complained of pain traveling to his leg, numbness and morning stiffness. Matthews underwent a Myelogram and CAT scan in summer of 1990. Dr. Llewellyn *767 testified that the Myelogram and CAT scan did not reveal evidence of herniation (cartilage fragments were not apparent), but showed swelling of the nerve root that confirmed Matthews' complaint of back pain and pain radiation into his lower extremities. The tests showed posterior protrusion of the L5-S1 disc on the MRI and a midline type disc at L5-S1 on the Myelogram/CAT scan. Further conservative treatment was offered. The mechanical injury did not resolve, while Dr. Llewellyn continued to see Matthews at two to three month intervals. In June, 1991, Dr. Llewellyn repeated the tests. According to Dr. Llewellyn, the same basic findings indicated that this injury was not healing, and would not likely heal. On 2 July 1991, Matthews underwent a discectomy, having the torn portion of the lower most disc excised both on the right and the left, resulting in removal of approximately one-half of the cartilage at the L5-S1 disc. Dr. Llewellyn said that bilateral disc rupture indicates a great deal of trauma extended down to the joint, and results in a condition wherein it is more difficult for the back to settle and strengthen itself. The goal of the surgery, according to Dr. Llewellyn, was not to "cure" Matthews, but to allow him to be comfortable 80 percent of the time and to have some aches or pains, or burning or stinging that he could treat without having to go to the doctor the remaining 20 percent of the time.
Dr. Llewellyn testified that since the 1991 surgery, he and other members of Methodist Neurosurgery Center have seen Matthews. Matthews took an anti-inflammatory medication following surgery, and he is still on modest medication. He takes a muscle relaxer to lessen night cramps, and a pain preparation for persistent headaches and back soreness. Dr. Llewellyn did not believe Matthews had achieved the optimal result of 80 percent comfort in 80 percent of his activities.
After surgery, Dr. Llewellyn advised Matthews not to climb, jump, do repetitive lifting, constantly ride or drive "like an eighteen-wheeler or something of that nature," because his back could likely get sore and stiff from those activities, and could experience additional injury. Dr. Llewellyn opined that Matthews should do light work, which Dr. Llewellyn described as alternatively sitting and standing at hourly intervals, occasionally lifting twenty pounds or less and driving to and from work. He expressed his medical opinion that the disc rupture was caused, at least in part, by the accident of 23 June 1989.
On cross-examination, Dr. Llewellyn confirmed that Matthews had withheld from him the fact of his prior back injuries. Dr. Llewellyn then admitted that assuming Matthews had prior accidents in which he had enough back pain to have sought medical treatment, he could not say with a reasonable degree of medical certainty that the 1989 accident caused the diagnosed disc problem that resulted in Matthews' surgery.
APPELLANT'S FIRST ASSIGNMENT OF ERROR: In awarding damages the jury erred (a) when it awarded medical expenses of $35,220.00, future lost wages of $10,000 but only $451 for general damages; (b) failing to award past lost wages; and (c) awarding only $10,000 for diminished earning capacity.
Matthews' contention that the jury awarded no general damages, rendering the verdict erroneous as a matter of law and requiring de novo assessment of general damages on appeal is without merit. See, Odendahl v. Wild, 418 So.2d 36, 37 (La.App. 4th Cir.1982). The verdict form reflects an award of $451 as general damages. The jury's damage award is, however, inconsistent, and judicial economy requires this Court to conduct a complete de novo review of the damage issue. See, Daigle v. White, 544 So.2d 1260, 1263 (La.App. 4th Cir.1989).
Appellant contends that "the jury committed error when it awarded medical expenses of $35,220.00, future lost wages (diminished earning capacity) of $10,000, but only $451.00 for general damages which was the identical figure that the plaintiff testified to as being the amount he paid to repair his vehicle." We have examined the entire appellate record, including the jury's verdict on special interrogatories, and conclude that the jury verdict was internally inconsistent and incomplete.
*768 In order to determine the appropriate damage award, we have reviewed the entire record. The record reflects that Matthews withheld from all his treating physicians the fact that he had suffered several prior injuries to his back for which he had previously sought medical treatment and legal redress. It further reflects inconsistencies between his accounts of his medical treatment, his work history, his pre-accident income (both reported and unreported) and his federal income tax filings. These inconsistencies exist between his deposition testimony and trial testimony; further, his trial testimony is replete with internal contradictions and statements that were contradicted by documentary evidence on cross examination. Clearly, while the minor collision between the taxi cab and Conco's truck may have occurred, it was not the cause in fact of Matthews' surgery.
The law of Louisiana is clear, in a negligence claim under articles 2315 and 2316 of the Louisiana Civil Code, a plaintiff must prove by a preponderance of the evidence five separate elements: (1) the defendant had a duty to conform his conduct to a specific standard (the duty element); (2) the defendant failed to conform his conduct to the appropriate standard (the breach of duty element); (3) the defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries (the cause-in-fact element); (4) the defendant's substandard conduct was a legal cause of the plaintiff's injuries (the scope of liability or scope of protection element); and (5) actual damages (the damages element.) Roberts v. Benoit, 605 So.2d 1032 (La.1991).
The jurisprudence is clear that breach of duty alone is not sufficient to establish liability.
Once a duty and a breach thereof have been established, the court must then determine if the breach is a legal cause of the victim's injuries. The Roberts court analyzed legal cause in terms of "proximate cause" and "cause in fact" and concluded that Louisiana has merged the two into an "ease of association" test. Roberts, supra at 1045, 1055. Although not based entirely on foreseeability, the test does encompass that factor. Essentially, the inquiry is "How easily does one associate the plaintiff's complained of harm with the defendant's conduct." Carr v. City of New Orleans, 626 So.2d 374 (La.App. 4th Cir. 1993), writ denied, 94-0062 (La. 3/11/94), 634 So.2d 398. (Emphasis added.)
Cause in fact is generally a "but for" inquiry; if the plaintiff probably would not have sustained the injuries but for the defendant's substandard conduct, such conduct is a cause-in-fact. Fowler v. Roberts, 556 So.2d 1, 5 (La.1989). To the extent that the defendant's actions had something to do with the injury the plaintiff sustained, the test of a factual, causal relationship is met. Hill v. Lundin & Associates, 260 La. 542, 256 So.2d 620, 622 (1972); Faucheaux v. Terrebonne Consolidated Government, 615 So.2d 289, 292 (La.1993). (Emphasis added.)
"Negligent conduct is a cause in fact of harm to another if it was a substantial factor in bringing about that harm." Fontenot v. Fontenot, 93-2479 (La. 4/11/94), 635 So.2d 219, 222; Fn. 7, quoting Dixie Drive It Yourself System New Orleans Co. v. American Beverage Co., 242 La. 471, 482, 137 So.2d 298, 302 (1962). (Emphasis added.)
Matthews presented no medical testimony from the various medical doctors who had treated Matthews for his pre-accident back injuries that would prove that those injuries alone would not have necessitated Matthews' surgery. Matthews admitted in the presence of the jury that he had withheld from the doctors who treated him for the 1989 accident the fact that he had suffered four prior back injuries that required medical treatment. The defendants called Dr. Stephen Katz, a chiropractor who treated Matthews in connection with his admitted 1988 automobile accident. At that time, before the accident involving the Conco truck, Matthews complained to Katz of low back pain with occasional pain radiating into his leg. The leg pain originated in the lower back, at the same L5-S1 location where Matthews' subsequent surgery was performed, and radiated from the lower back down to the leg. Katz testified that radiating pain of this kind could be caused by inflammation of the nerve or from irritation of the nerve by a disc. Katz testified further that some patients with disc *769 injuries with low back pain radiating into the leg in fact improve with conservative care.
In light of the undisclosed medical history, Dr. Llewellyn was not able to say to a reasonable medical certainty that the surgery was necessitated by the 1989 accident. Based on the totality of medical evidence, we conclude that the 1989 accident at most aggravated Matthews' previous back condition, contributing to the need for surgery. On the basis of our complete de novo review of the evidence adduced at trial, we conclude that Matthews has suffered general damages attributable to this accident in the amount of $10,000. See, Juneau v. Strawmyer, 94-0903 (La.App. 4 Cir. 12/15/94), 647 So.2d 1294; Ronquillo v. Belle Chase Marine Transp., Inc., 629 So.2d 1359, 1363 et seq. (La.App. 4th Cir.1993). We find that the record supports an award of medical expenses of $3,522.00 attributable to the 1989 accident.
Our de novo review of the record in its entirety convinces us that Matthews failed to prove any past or future wage loss. Matthews presented no contemporaneous record of his earnings as a taxi cab driver prior to the accident. He declared no income on those federal income tax returns that he filed in 1984, 1986 and 1987, which disclosed only his wife's income.[3] Matthews testified that he filed federal income tax returns for 1988, 1989 or 1990, and had begun making "real money" driving his taxi cab in 1988. On cross-examination, he admitted that he did not file a return for himself or for his wife for 1988, 1989 or 1990.
The only evidence Matthews presented concerning lost wages was his unsupported claim:
Q: What do you think you cleared per week after [payment of gas, insurance and maintenance]?
A: You make about maybe five, $600.00. When you finished [sic] with your maintenance, I winds [sic] up with maybe four fifty, five hundred.
In light of Matthews' inconsistent and contradictory testimony concerning his work history and tax reporting, we find no credible evidentiary support for an award of lost wages.
The testimony failed to establish Matthews' earning levels prior to or after the accident. He testified that he suffered a back injury while working as a welder in 1981, and that he was often laid off or fired during his welding career. At trial, Matthews testified that he had not worked as a welder after 1985; in deposition, he testified that he was a full-time cab driver since 1984. Under either scenario, his welding career ended at least four years before the accident. There being no credible evidence of his pre-accident earnings, which would establish a basis for determining his "undiminished earning capacity," there is inadequate foundation for the expert speculation offered by the plaintiff's economist. We amend the judgment to eliminate the damage award for diminished earning capacity, there being no evidence to support such an award.
SECOND ASSIGNMENT OF ERROR: The trial court erred in denying plaintiff's motion for judgment notwithstanding the verdict.
Because of the inconsistent verdicts, the trial judge erroneously denied Matthews' motion for judgment notwithstanding the verdict as to damages. Odendahl, 418 So.2d at 37. In the interest of judicial economy, we have awarded those damages that are supported by the record. See, Daigle v. White, supra; Woods v. Cumis Ins. Soc., Inc., 364 So.2d 213 (La.App. 4th Cir.1978).
THIRD ASSIGNMENT OF ERROR: The court erred in not providing for judicial interest on the judgment from judicial demand.
In an action ex delicto such as the instant case, legal interest shall attach from the date of judicial demand. La.R.S. 13:4203. We amend the judgment to reflect the attachment of legal interest from 17 October 1989.

*770 CONCLUSION

Because of the inconsistency and incompleteness of the verdict, and based upon our review of the entire record, we amend the jury's damage verdict to award the following damages attributable to the 1989 accident: medical expenses of $3,522.00, no lost wages, no future lost wages (diminished earning capacity) and general damages of $10,000, together with legal interest on the sum of $13,522.00 from 17 October 1989.
JUDGMENT REVERSED IN PART; AMENDED, AND, AS AMENDED, AFFIRMED IN PART.
NOTES
[1] Conco, Bergeron and Old Republic in brief seek de novo review of the entire jury verdict, including the finding of negligence. Appellees seek to modify, revise or reverse the trial court's judgment. Having neither appealed nor answered Matthews' appeal, appellees' argument is not properly before this Court and need not be considered. La.C.Civ.P. art. 2133; Chatelain v. Circle K Corp., 94-0227 (La.App. 4 Cir. 10/13/94), 644 So.2d 1079, fn. 3; Rogers v. Daigle, 93-1523 (La.App. 1 Cir. 6/3/94), 643 So.2d 758, fn. 2; Morris v. Louisiana Dept. of Transp. and Development, 93-924 (La.App. 5 Cir. 4/14/94), 635 So.2d 774, 775; writ not considered, 94-1618 (La. 9/30/94), 642 So.2d 864.
[2] Matthews admitted on cross-examination that he withheld from the physicians who treated him for this 1989 accident the following history of prior back injuries for which he had sought and obtained medical treatment and legal compensation:

1981 on the job injury while welding at Avondale Shipyards;
1985 neck and back injury sustained in an automobile accident;
1987 accident with back injury;
April, 1988 accident for which he received chiropractic treatment of back injury.
[3] At trial, Matthews denied having filed returns for 1984 and 1986, but, upon being shown copies of the forms obtained from the Internal Revenue Service in response to subpoena, and which bore his signature, he admitted to having signed and filed the returns which indicated he had no income except that earned by his wife.