673 So.2d 1192 (1996)
John L. GAINES
v.
DAIICHI CHUO SHIPPING (AMERICAN), INC., et al.
No. 95-CA-1597.
Court of Appeal of Louisiana, Fourth Circuit.
April 24, 1996.
*1194 Stephen P. Bruno and Natasha R. Zimmerman, Bruno and Bruno, New Orleans, for Plaintiff.
Robert B. Fisher, Jr., Douglas L. Grundmeyer, and Scott A. Soule, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, for Defendant.
Before BARRY, KLEES and BYRNES, JJ.
BYRNES, Judge.
Plaintiff, John L. Gaines, appeals the damage award in his personal injury action arising from his slip and fall on a ship's deck. Defendant, Cavalier Shipping Company ("Cavalier"), answers the appeal, contesting liability, as well as damages. We affirm as amended.
In March 1990, Daiichi Chuo (American) Inc. ("Daiichi") contracted with Cooper/T. Smith Stevedoring Company, Inc. ("Cooper") to unload steel coils shipped on Cavalier's vessel, the M/V CRYSTAL QUEEN in New Orleans. On March 20, 1990 when Cavalier turned over the vessel to Cooper for unloading, both the shipowner and the stevedore were aware of the obvious hazard of hydraulic oil leaking on the deck. The vessel's shipmate provided one or two bags of sawdust to cure the hazard. The stevedore also instructed his derrick men to pour more bags of sawdust on the oil, but the problem continued. On March 21 and 22, 1990, Vincent *1195 Lampo, the Superintendent for Cooper, inspected the ship, again advised the vessel's chief mate, and instructed the derrick men to pour additional sawdust and for his men to work safe. At nearly noon on March 22, 1990, upon exiting the cargo hold, plaintiff fell on hydraulic oil, hurt his back, and was assisted off the vessel. Subsequently, plaintiff was treated by Dr. Andrew Lombardo, Dr. James Williams and Dr. Robert Applebaum. Gaines did not work for a month and then returned to restricted work in September 1990. In July 1991 he returned to full-time employment as a dray clerk rather than as a clerk checker, as he had been employed previously for 25 years.
On March 22, 1991, Gaines filed an action against Daiichi and Linden Shipping Company ("Linden"). After plaintiff's supplemental and amended petition named Cavalier as the vessel owner, plaintiff dismissed his claims against Daiichi and Linden. Cooper intervened, seeking medical and compensation benefits paid to the plaintiff.
At a bench trial in December 1994, the parties stipulated that Cooper paid plaintiff $82,422.27 in compensation benefits and $10,878.90 in medical benefits. The trial court entered a judgment on March 2, 1995, in favor of the plaintiff and against Cavalier for damages totalling $132,668.19, subject to plaintiff's 30 percent comparative negligence. In its written reasons, the trial court awarded $13,000 in general damages, $83,399.91 in past loss earnings, and $36,268.28 for future loss earnings. On March 20, 1995, the trial court rendered an amended judgment in favor of intervenor Cooper in the sum of $10,878.90 to recover medical benefits paid to the plaintiff. Gaines' appeal and Cavalier's answer to the appeal followed.
On appeal plaintiff seeks an increase in the general damage award. Cavalier denies liability and contends that all claims against Cavalier should be dismissed, or alternatively that plaintiff's comparative negligence should be increased to at least 50 percent. A review of damages follows a review of the liability claims.

LIABILITY
Cavalier contends that it is not liable for plaintiff's damages. Under Section 5(b) of the Longshoremen and Harbor Worker's Compensation Act, 33 U.S.C. Sec. 905(b), plaintiff has a cause of action against a negligent shipowner. The shipowner owes the stevedore and its employees a duty to exercise due care under the circumstances. Scindia Steam Nav. Co., Ltd. v. De Los Santos, 451 U.S. 156, 101 S.Ct. 1614, 68 L.Ed.2d 1 (1981). The court recognized the following three duties of the shipowner:
(1) The "turnover duty" to provide safe conditions and a duty to warn of known, non obvious hazards when the shipowner turns over the ship to the stevedore upon commencement of stevedoring operations;
(2) The duty to exercise reasonable care to prevent injuries to longshoremen in areas that remain under active control of the vessel; and
(3) The duty to intervene, arising when the shipowner has knowledge of the hazard and that the stevedore, in exercising improvident judgment in continuing to work in the face of it, cannot be relied on to remedy the hazard or work around it.
A shipowner may be negligent for failing to eliminate an obvious hazard that it could have eliminated, but only when it should have expected that an expert stevedore could not or would not avoid the hazard and conduct cargo operations in a reasonably safe manner. Kirsch v. Plovidba, 971 F.2d 1026 (3 Cir.1992).
The fact finder has a duty to assess the credibility of the witnesses, and the determination of fact may not be disturbed on appeal unless the record establishes that the finding is clearly wrong or manifestly erroneous. Alexander v. Pellerin Marble & Granite, 93-1698, p. 5 (La. 1/14/94), 630 So.2d 706, 710. A trier of fact's finding in questions of causation are subject to the manifest error-clearly wrong standard. Young v. Armadores deCabotaje, S.A., 617 So.2d 517 (La. App. 4 Cir.1993), writs denied, 625 So.2d 170 & 171 (La.1993), certiorari denied, ___ U.S. *1196 ___, 114 S.Ct. 1067, 127 L.Ed.2d 386 (1994). Where there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous. Rosell v. ESCO, 549 So.2d 840 (La.1989).
Cooper's superintendent, Vincent Lampo, and Gregory Miller, Cooper's operations manager, testified that on observing oil on a vessel, they would advise the ship mate and ask to owner to cure the hazard. Work would continue.
The ship's crew knew that the hazard existed, that the stevedore tried to cure the problem, and that the stevedore continued to unload the cargo. This court cannot find that the trial court was manifestly erroneous or clearly wrong in determining that Cavalier breached its duty to intervene and protect Gaines. The breach of duty was the cause in fact of the accident.
Cavalier complains that plaintiff is at least 50 percent comparatively negligent because he knew of the hazardous condition of the hydraulic oil on the deck but he had no recollection of looking down before he stepped on the deck and slipped. The photographs showed that a metal ladder was permanently attached next to the doorway so that plaintiff could have held onto the handrail when stepping down. George Duffy, the defense marine and stevedoring operations expert, testified that plaintiff should have watched his step and failed to act safely because he did not exit the same door where he entered the cargo hold. Because testimony showed that the oil continued to flow in a considerable amount, and Cavalier did not attempt to cure it when the stevedore continued to unload the cargo, we conclude that the trial court was not clearly wrong in finding that the greater fault lies with Cavalier, and that plaintiff is 30 percent comparatively negligent.

DAMAGES
Plaintiff initially complains that the trial court's general damage award of $13,000 should be increased because it is dramatically low in comparison to the special damage awards totaling $130,547.09. By awarding plaintiff past and future lost wages, the trial court is in effect saying that plaintiff is disabled for this period of time. Based on the special awards, the general damage award is insufficient to compensate for the pain and suffering and mental anguish arising out of a disability of this duration. The damage awards are internally inconsistent and incomplete, warranting a de novo review by this court. See Matthews v. Consolidated Companies, Inc., 94-2425, p. 4 (La.App. 4 Cir. 6/29/95), 657 So.2d 765, 767, reversed in part on other grounds, 95-1925 (La. 12/8/95), 664 So.2d 1191; Daigle v. White, 544 So.2d 1260, 1263 (La.App. 4 Cir.1989).
The parties do not contest the special damage award of $83,399.91 for past loss earnings or the amount of $10,878.90 in favor of Cooper for medical benefits paid to the plaintiff. In his brief, plaintiff contested the amount of the future loss earnings award of $36,269.28 but abandoned that claim during oral argument.[1] This court agrees with *1197 the special damage awards but finds them to be inconsistent and incongruous with the general damage award.
In a personal injury suit, the plaintiff has the burden of proving, by a preponderance of the evidence, a causal connection between the injury sustained and the accident which caused the injury; the test for determining the causal connection between the accident and the subsequent injury is whether the plaintiff proved through medical testimony that it is more probable than not that the subsequent injuries were caused by the accident. Maranto v. Goodyear Tire & Rubber Co., 94-2603, pp. 3, 6 (La. 2/20/95), 650 So.2d 757, 759, 761. The defendant takes its victim as it finds him and is responsible for all natural and probable consequences of its negligence. Lasha v. Olin Corp., 625 So.2d 1002, 1006 (La.1993). If a defendant's conduct aggravates a pre-existing injury or condition, the defendant must compensate the victim for the full extent of the aggravation. Id.; Ehrman v. Holiday Inns, Inc., 94-0312 (La.App. 4 Cir. 3/29/95), 653 So.2d 732, writs denied, 95-1051 (La. 6/16/95), 655 So.2d 343.
To determine the appropriate general damage award, this court has undertaken a de novo review of the record. Gaines suffered from a pre-existing degenerative lower back disease that was aggravated by the accident.
Gaines was 52 years old at the time of the accident. He had been employed for 25 years as a clerk checker, which entailed manual labor including climbing and crawling in ship holds, as well as sorting and off-loading cargo.
Gaines' medical history shows that he had a sprained back and received compensation for eight and one-half months in 1973 after jumping off cargo at work. Plaintiff had a minor injury in 1985. His neck, back and left arm were injured in an automobile accident on February 14, 1988. Dr. Joseph Braud, a general practitioner who was an expert in the field of disability evaluation, examined and treated Gaines beginning in 1961. At various times over the years, Dr. Braud prescribed anti-inflammatory medication and heat therapy for plaintiff's complaints of back pain. He also prescribed antibiotics for back pain related to urinary tract infections. Dr. Braud discharged Gaines in 1988, finding no permanent injury.
Dr. Andrew Lombardo, an expert in occupational medicine, treated the plaintiff on the day of the accident through April 1991. At the time of trial Dr. Lombardo continued to prescribe pain and inflammatory medicine for the plaintiff's back pain. Dr. Lombardo referred plaintiff to Dr. James Williams and Dr. Robert Applebaum.
Dr. James Thomas Williams, an orthopedic surgeon, initially saw Gaines on March 26, 1990. Plaintiff complained of constant pain which worsened by standing or sitting for very long, or bending and lifting. Dr. Williams reviewed x-rays and stated that plaintiff suffered a soft tissue injury to his neck and lower back, and diagnosed a symptomatic degenerative disease of his lower back. Dr. Williams testified that the degenerative disease became symptomatic as a result of the accident. He opined that plaintiff's pain was not caused by bulging disks at L4-L5 and L3-L4, which were revealed in a CT scan. The bulging discs were consistent with degenerative changes rather than resulting from an acute accident. He recommended that plaintiff not work in any capacity requiring heavy lifting or bending. Dr. Williams recommended that plaintiff return to work on a restricted basis.
Dr. Robert Applebaum, a neurosurgeon, testified that plaintiff's complaints included headaches. He observed limitation of motion, minimal muscle spasm, and diminished sensation upon pin pricks of the left foot suggesting a problem in the L-5 nerve root. A myelogram and post myelogram CT scan showed no evidence of a ruptured disk or nerve irritation. Dr. Applebaum found no neurological basis for plaintiff's continued symptoms, and that the plaintiff suffered *1198 from a degenerative disease of the lower back. He discharged the plaintiff with restricted activity, instructing him to see Dr. Williams.
Dr. James LaBorde, an orthopedic surgeon, testified on behalf of the defendant. Dr. LaBorde found that plaintiff suffered non-organic pain as there was no physical basis for his complaints of pain during axial rotation. Dr. Laborde opined that plaintiff had pre-existing arthritic changes.
Dr. K.E. Vogel, a neurosurgeon, saw Gaines on October 11, 1990 and January 24, 1991. Reviewing the myelogram and CAT scan performed on September 4, 1990, Dr. Vogel found that Gaines had intractable lumbosacral pain and recommended conservative treatment.
Witnesses, including plaintiff, two relatives and a co-worker, testified that plaintiff did not complain of back pain prior to the accident but plaintiff had continuous complaints of back pain thereafter. Witnesses testified on behalf of the plaintiff that the plaintiff could no longer fish, his favorite hobby, or hunt, and he is less active because he cannot sit for extended periods.
Plaintiff missed one month of work, was restricted in his work activities, and returned to work on a full-time basis a year after the accident. Because of his complaints of continued back pain, he did not return to work as a clerk checker, which involved unloading cargo from ships to docks, and included strenuous activity such as climbing ladders of approximately 50 feet or more in height, or crawling in the cargo holds. Instead, plaintiff engaged in work as a dray clerk which entailed the loading of on-shore freight onto railroad cars. A de novo review convinces this court that the general damage award should be increased to $52,000.
Accordingly, the judgment of the trial court is amended to increase the general damage award from $13,000 to $52,000. In all other respects the trial court's judgment is affirmed.
AFFIRMED AS AMENDED.
NOTES
[1] Pension losses and other fringe benefits are recoverable. Averna v. Industrial Fabrication and Marine Service, Inc., 562 So.2d 1157 (La. App. 4 Cir.1990). In his economic report, Dr. Kenneth Boudreaux stated on behalf of the defendant that plaintiff would not lose any fringe benefits because he is now employed full-time as a dray clerk. Plaintiff claimed that he earned greater fringe benefits as a clerk checker because he had more opportunity to work overtime. Plaintiff testified that after his accident he returned to work as a dray clerk rather than as a clerk checker because of his physical limitations. Mr. John Heusler, the Dispatcher for the New Orleans Clerks and Checkers Union, testified that the dray clerk's pension and other benefits were less than those of a clerk checker. He explained that dray clerks are rarely offered overtime work, whereas plaintiff's employer offered considerable opportunity for clerk checkers to engage in overtime work earning time and a half. Prior to the accident, plaintiff worked as a roster clerk for Cooper and other stevedores. Mr. Heusler related that any clerk would have to place his name on the union overtime list to obtain overtime work. After the accident, the plaintiff would only work for Cooper, and he did not place his name on the overtime list so he lost no opportunity to work overtime and therefore should not be compensated for a claim based on overtime pay.

Lost fringe benefits for holiday and vacation pay should not be included when those amounts are reflected as income on Internal Revenue W-2 tax forms. Young v. Armadores de Cabotaje, 617 So.2d 517 (La.App. 4 Cir.1993), writs denied 625 So.2d 170 & 171 (La.1993), certiorari denied, ___ U.S. ___, 114 S.Ct. 1067, 127 L.Ed.2d 386 (1994). Mr. Wolfson acknowledged that Gaines' W-2 forms showed earnings that included vacation and royalty payments, which he calculated as fringe benefits. Addressing plaintiff's claim raised in his brief but abandoned in oral argument, this court agrees with Dr. Boudreaux's midpoint calculation that plaintiff's award for future loss earnings is $36,268.28.