| gDALEY, Judge.
Defendants, Continental Casualty Insurance Company, Anthony J. Occhipinti and John A. Occhipinti appeal a judgment awarding damages to plaintiff, Virgil A. Kropp, Jr. Kropp filed suit against defendants, alleging he sustained injuries in an auto accident. Liability was stipulated and the issue of damages went to a bench trial. The trial court awarded plaintiff $15,000.00 in general damages, $1,000.00 in lost wages, and $10,000.00 in medical expenses. Defendants appeal these amounts, arguing that the general damages were excessive and that the damages for lost wages and medical expenses were unsupported by the record.
The accident occurred on April 10, 1996. Defendant, Anthony Occhipinti, was driving a Chevrolet Blazer owned by John Occhipinti and rear-ended Kropp, who was driving a 1988 Chevrolet taxi cab. Mr. Kropp had been in three prior accidents. The first one occurred in 1987, and as a result of that accident Mr. Kropp was treated for lumbar back pain and was diagnosed with lumbar spondylosis. The second accident ^occurred on November 29, 1995, and the third accident occurred on December 23, 1995. After the November accident, he was treated for cervical and thoracic back pain by Dr. Bogran.[1]
Following the third accident, which occurred in December of 1995, plaintiff treated with Dr. Charles Simmons, whose deposition was introduced into evidence. Dr. Simmons’s notes indicate that he treated the plaintiff for low back (lumbar), neck pain and right upper leg pain following this accident. He saw Kropp on December 29, 1995, January 8th, February 19th, February 29th, March 12th, March 21th and April 8, 1996. During this time, the plaintiff exhibited some spasm and decreased range of motion in his back. Dr. Simmons’s notes also indicate that plaintiffs complaints of pain remained fairly constant during this time. Because he felt the plaintiff was not improving significantly, in March Dr. Simmons recommended *349 that Kropp see an orthopedist. He felt that plaintiff might have a disc injury in the cervical or lumbar area because his complaints of pain did not improve in the 3-4 months since the December 1995 accident.
Kropp returned to Dr. Simmons on April 22, 1996, following the April 10 th accident that is the subject of this litigation. The April 10 th accident was Mr. Kropp’s fourth accident. According to Dr. Simmons’s notes, the plaintiff reported that he had been rearended in a car accident and that it aggravated his neck and back pain, but did not cause any new injuries. The doctor’s notes indicate that Kropp’s range of motion was slightly worse than on April 8th, his last visit before the April 10th accident. Dr. Simmons saw Kropp again on May 13, 1996, and indicated that there was no significant changes in the plaintiffs condition since the previous visit on April 22nd.
UKropp’s next visit to Dr. Simmons was not until October 29, 1997, following another car accident, his fifth. His complaints following the fifth accident were upper back pain, not lumbar pain. Dr. Simmons last saw the plaintiff on January 7, 1998.
In the intervening time period, Kropp had been treated by Dr. Kenneth Vogel, a neurosurgeon, on July 23, 1996 and on August 26, 1997, when Dr. Vogel performed a lumbar medial branch neuroto-my. This procedure consisted of the insertion of a needle into the patient’s back to cauterize the nerve endings that are suspected of causing the pain. Plaintiff reported that the procedure gave him some, but not total, relief from the back pain.
MRI films taken prior to the neurotomy, as well as X-rays, were interpreted as normal, showing no objective signs of a disc injury.
Defendants argue that the medical testimony established that plaintiffs injuries were primarily caused by the previous two accidents in November and December of 1995, and that any physical symptoms relative to their accident lasted approximately only one month and, therefore, the general damage award is excessive. Likewise, they argue that the award for medical expenses, which was 50% of plaintiffs past medical expenses, is excessive because it was not established that this accident contributed to half of plaintiffs past medical expenses.
Dr. Russo, who performed an independent medical examination of the plaintiff in 1997, found no objective symptoms like spasms. He opined that plaintiff had sustained a soft tissue injury in the December 1995 accident (third accident) that had been briefly aggravated by the April 1996 accident (fourth accident), but that both had resolved at the time of his examination. Dr. Russo noted that the neurotomy procedure, performed on Mr. Kropp by Dr. Vogel, is performed by only one | sphysician, namely Dr. Vogel, because the medical community as a whole doubts the effectiveness of that procedure.
The record as a whole shows that Kropp was being treated for lumbar pain and neck pain following his third accident, which occurred in November of 1995. In March of 1996, because Kropp was showing no improvement in his complaints of pain, Dr. Simmons recommended that he see an orthopedist. Kropp did not see the orthopedist until after the April 1996 accident. His treatment records with Dr. Simmons show that the April 1996 accident did exacerbate his complaints of pain and limited range of motion, but that the aggravation was mild to moderate, not extreme. Kropp’s condition and complaints remained fairly constant until the neuroto-my in August of 1997, which appeared to provide him with some pain relief in his back, though not in his leg.
GENERAL DAMAGES
Defendants argue that the general damage award of $15,000.00 is excessive, because at the most, plaintiffs condition was only aggravated for about one month following the April 1996 accident.
*350 The record shows that Kropp’s condition was mildly to moderately aggravated by the April 1996 accident. At his last visit with Dr. Simmons prior to this accident, Kropp had shown some improvement in his condition, the first improvement that Dr. Simmons noted. Kropp’s pain and range of motion improved slightly, until the neurotomy was performed in August of 1997, which appeared to give him significant, though not total, pain relief.
We cannot say that the trial court’s award of $15,000.00 in general damages was an abuse of discretion. Kropp proved to the satisfaction of the trial court that the 1 (April 1996 accident aggravated his pre-existing condition and required medical treatment, contributing to the need for the neurotomy procedure. We find no manifest error in this award. See Matthews v. Consolidated Companies, Inc., 94-2425 (La.App. 4 Cir. 6/29/95), 657 So.2d 765; Juneau v. Strawmyer, 94-0903 (La.App. 4 Cir. 12/15/94), 647 So.2d 1294. In these cases, the plaintiffs’ injuries were attributable only in part to the accident sued upon and were also attributable to other injuries caused by other tortfeasors not joined in the suit. In both cases, plaintiffs had preexisting back conditions that were attributable to other events from the accident sued upon, such as a previous car accident or injury. Those fact finders apportioned the damages to reflect which amount was the “reasonable probable consequence” of the only accident at issue in the suit. In each case, the plaintiff underwent a surgical procedure that the fact finder determined was woi-due solely to the accident sued upon. In each case, the plaintiff was awarded $10,000.00 for general damages.
In the case at bar, it is apparent that Mr. Kropp’s back symptoms were not caused solely by the April 10 th accident and were attributable in part to his previous accidents. Thus, the trial judge was within his vast discretion to award Mr. Kropp $15,000, recognizing that his damages were attributable in part to the previous accidents that were not a subject of this suit.
LOST WAGES
We agree with defendants that the plaintiff did not prove $1,000.00 in lost wages. To recover for loss of past or future wages, the appellee must present medical evidence which indicates with reasonable certainty that there exists a residual disability causally related to the accident. Aisole v. Dean, 574 So.2d 1248 (La. 1991). Plaintiffs evidence was sketchy at best. His social security earnings report for 1995 [7wages earned was only $453.00. Kropp’s testimony regarding how much he was working following the April 1996 accident was inconsistent. To one doctor he reported that he was working part time (Dr. Vogel), but to another he reported that he had been fired from his cab company because he had to borrow a cab. No doctor restricted Kropp from his work as a taxi cab driver as a result of these accidents. There was also no documentation of just how much Kropp earned as a cab driver, except for the Social Security records. Therefore, we find that the record contains insufficient evidence for the court to have made this award, and we reverse it.
MEDICAL EXPENSES
Defendants object to the award of $10,000.00 in medical expenses. They argue that plaintiffs expenses were $155.00 for seeing Dr. Simmons twice after the accident and that Dr. Simmons testified that the neurotomy is not related to the April 1996 accident.
We disagree. Dr. Simmons noted that the plaintiffs condition did worsen slightly after the April 1996 accident, after having improved slightly on the March 21, 1996 visit. We agree with the trial court that “it is difficult to distinguish what injuries are attributable to which accident, but the plaintiff proved that at least some portion of his injuries are attributable to the April 10th accident.”
*351 Plaintiffs medical expenses incurred after the April 1996 accident, including the expenses related to the neurotomy, totaled just over $20,000.00. We cannot say that the trial court’s award to plaintiff of half that amount, or $10,000.00, is an abuse of discretion.
[^Accordingly, the judgment is affirmed insofar as it awarded general damages of $15,000.00 and $10,000.00 in medical expenses to plaintiff and the award for lost wages is reversed. Each party is to bear their own costs of this appeal.
AFFIRMED IN PART; REVERSED IN PART.

. Joint Stipulation No. VIII. Mr. Kropp filed suit as a result of that accident (no. 500-378 in the 24 th JDC).