790 So.2d 35 (2000)
Ronnie J. BROWN, Individually and in His Capacity as Provisional Curator for Sharon Gay Davis Brown and as Natural Tutor for Cory H. Brown
v.
GLAXO, INC., Glaxo Group, Ltd., Glaxo Operations UK, Ltd., Glaxo Pharmaceuticals, a Division of Glaxo, Inc., and Cerenex Pharmaceuticals, a Division of Glaxo, Inc.
No. 99 CA 1531.
Court of Appeal of Louisiana, First Circuit.
November 15, 2000.
Writ Denied February 9, 2001.
*37 Jerald P. Block, Thibodaux, William F. Dodd, Houma, Fred Wilkins, Duke W. Ponick, Jr., Kansas City, MO, Counsel for Plaintiffs-Appellees, Ronnie J. Brown, et al.
Frank A. Fertitta, Baton Rouge, Counsel for Defendant, Dr. Tyrone Girod.
W. Evan Plauche, Metairie, Counsel for Defendant, Rite Aid.
Daniel Lund, Quentin F. Urquhart, Jr., Stephanie Lottinger Irwin, New Orleans, Madeleine McDonough, Kansas City, MO, Counsel for Defendants-Appellants, Glaxo Wellcome, Inc., Glaxo Group Limited, Glaxo Wellcome PLC and Glaxo Research and Development, Ltd.
Errol J. King, Baton Rouge, Counsel for Intervenor, United Healthcare of Louisiana, Inc.
Before: FOIL, FITZSIMMONS, and WEIMER, JJ.
FITZSIMMONS, Judge.
Plaintiffs are Ronnie J. Brown, individually, as curator for his wife, Sharon Gay Davis Brown, and as natural tutor for their son, Cory H. Brown. Plaintiffs sued for damages to Mrs. Brown caused by her use of the drug Imitrex. By the time of trial, the remaining named defendants were Mrs. Brown's doctor, Dr. Tyrone Girod, and the drug manufacturer: Glaxo Wellcome, Inc.; Glaxo Group Limited, Glaxo Wellcome, PLC; and Glaxo Research and Development, LTD. (Glaxo). Additionally, in its answer, Glaxo asserted that Mr. Brown, Mrs. Brown, and Dr. Girod were at fault. In this adequacy of warning case, the jury found that the warning was inadequate and held in favor of plaintiffs. Glaxo appealed. We reverse in part, and affirm in part.

FACTS AND PROCEDURAL BACKGROUND
For the relief of migraine headaches, Dr. Girod prescribed Imitrex injections for his patient, Mrs. Brown, in April of 1993. Before the drug was prescribed, Mrs. Brown had been seen by a cardiologist in 1992. He determined that she had no coronary artery disease. Mrs. Brown's husband, the chief pharmacist at a Baton Rouge pharmacy, filled the Imitrex prescription. Dr. Girod and Mr. Brown both received information or "details" on Imitrex from a Glaxo salesman, Mr. Guy Lefort. During the presentation, Mr. Lefort reviewed promotional materials. He also provided his customers with the package insert for doctors and the consumer information insert.
The Imitrex injections provided significant relief for Mrs. Brown's headaches. However, by September of 1993, Mrs. Brown noted that the chest pains she often experienced after taking Imitrex were increasing in severity. She had also begun vomiting after taking the Imitrex. In a journal entry dated September 25, 1993, Mrs. Brown wrote that she was "getting scared of Imitrex for first time ever." In the spring of 1994, Mrs. Brown reported a more severe reaction from Imitrex to her husband. He suggested that she tell her doctor.
In February of 1994, a woman in Kansas City, Missouri, died from a cardiac arrest shortly after taking Imitrex. This incident *38 occurred in the prescribing physician's office. Soon afterward, Glaxo became aware that the death was Imitrex-related. However, Glaxo did not issue a new warning, or alert doctors to an actual drug-related death, until August of 1994. On August 30, 1994, prior to the receipt of the new Glaxo warning in Baton Rouge, Mrs. Brown had a severe reaction shortly after taking an Imitrex injection. The paramedic on the scene recorded the chief problem as cardiac arrest secondary to anaphylaxis. She was taken by ambulance to a local hospital where she remained in a vegetative state until her death on June 20, 1996. This period was forty days shy of two years. Dr. Girod opined that the Imitrex caused the following medical problems: Her cardiac arrest, her brain damage from lack of oxygen, and her ultimate death.
The jury found that:
1. The Imitrex was unreasonably dangerous from a reasonably anticipated use of the product;
2. As of August 30, 1994, the warning was inadequate;
3. The inadequate warning was the cause of the damages;
4. Dr. Girod was not negligent or liable;
5. Mrs. Brown was negligent, but not liable because her negligence did not cause "her adverse event of August 30, 1994"; and,
6. Mr. Brown was also negligent, but not liable because his negligence was not a cause of the "adverse event."
One hundred percent of the fault was attributed to Glaxo. The jury awarded damages to plaintiffs, which included $650,000 for Mrs. Brown's loss of enjoyment of life. Other damages were also awarded to Mr. Brown for medical expenses and the loss of his wife, and to the Brown's son for his mental anguish and the loss of his mother.
Glaxo appealed. Glaxo argues that the jury erred when it found that (a) the damages arose from a reasonably anticipated use, (b) that Imitrex was unreasonably dangerous for lack of an adequate warning, and (c) that Mrs. Brown's negligence was not a cause of her "adverse event." Glaxo also assigned error to the jury's award for Mrs. Brown's loss of enjoyment of life.

LEGAL PRECEPTS
A product may be unreasonably dangerous, and the manufacturer liable, if an inadequate warning proximately caused the damage. Additionally, the damage must arise from a reasonably anticipated use. La. R.S. 9:2800.54 A & B(3); 9:2800.57 A. An adequate warning is one that "would lead an ordinary reasonable user ... to contemplate the danger in" the use of the product. La. R.S. 9:2800.53(9). However, under the "learned intermediary doctrine," the doctor acts as an informed intermediary between the drug company and the patient. Thus, a drug manufacturer has a duty to warn the prescribing doctor, rather than the patient, of potential risks associated with the use of the drug. This duty is fulfilled when the prescribing doctor is informed of the potential risks from the drug's reasonably anticipated use so that the physician may intelligently decide on its use with the particular patient. The doctor must then advise the patient accordingly. Mikell v. Hoffman-LaRoche, Inc., 94-0242, pp. 7-8 (La.App. 1 Cir. 12/22/94), 649 So.2d 75, 79-80. If the warning is "accurate, clear, and unambiguous," then the adequacy of the warning is a question of law. Calhoun v. Hoffman-LaRoche, Inc., 98-2770, p. 6 (La.App. 1 Cir. 2/18/00), 768 So.2d 57, rehearing granted on other grounds, 98-2770 (La.App. 1 Cir. *39 2/18/00), 768 So.2d 57, writ denied, 00-1223 (La.6/23/00), 765 So.2d 1041. We note that "`[r]easonably anticipated use'" is defined as "a use or handling of a product that the product's manufacturer should reasonably expect of an ordinary person in the same or similar circumstances." La. R.S. 9:2800.53(7).

ADEQUACY OF WARNING
Glaxo asserts that the written warning was adequate, and relies on the learned intermediary doctrine. Glaxo argues that Imitrex should not have been prescribed for Mrs. Brown; and, her failure to report severe side effects to her doctor constituted an unanticipated use. However, the peculiar facts of this case do not comfortably fit within the "reasonably anticipated use" defense urged by Glaxo. Any error in prescribing Imitrex would be the fault of her doctor. That theory was discarded by plaintiffs in the final stages of the trial, and rejected by the jury. More importantly, Glaxo did not appeal the jury's finding that Dr. Girod was not at fault. We posit that, if any failure to report severe side effects resulted even partially from Glaxo's own actions, the actions of the parties are more properly analyzed under a traditional apportionment of fault approach, and not an "unanticipated use" argument.
The peculiar facts here are better characterized as an adequacy of warning case, with a twist. In this unusual case, the patient's husband, Mr. Brown, was the pharmacist directly detailed on Imitrex by Glaxo. It was Mr. Brown who filled the Imitrex prescription for his wife. It was Mr. Brown who discussed Imitrex, and the expected symptoms, with his wife. Being a pharmacist, Mr. Brown was also aware of the warnings relative to Imitrex. Thus, Mrs. Brown's pharmacist husband had knowledge of the warnings, along with her doctor.
The threshold issue is whether the insert warning provided to the doctor was adequate to notify the doctor of the risks associated with use of the drug. If the insert warning to the doctor was adequate, we must determine if the verbal representations made by Glaxo to Mrs. Brown, via Mr. Brown, interdicted or superseded Glaxo's written warnings to the doctor, the pharmacist, and the consumer.
The pertinent parts of the applicable Imitrex warning to doctors are as follows:
CONTRAINDICATIONS: Imitrex Injection should not be given intravenously because of its potential to cause coronary vasospasm.
. . . .
WARNINGS:
Cardiac Events/Coronary Constriction: Serious coronary events following Imitrex Injection can occur but are extremely rare ....
[Imitrex] may cause coronary vasospasm in patients with a history of coronary artery disease, who are known to be more susceptible than others to coronary artery vasospasm, and, rarely, in patients without prior history suggestive of coronary artery disease.
There have been rare reports from countries in which Imitrex Injection has been marketed of serious and/or life-threatening arrhythmias, including arterial fibrillation, ventricular fibrillation, ventricular tachycardia; myocardial infarction; and marked ischemic ST elevations associated with Imitrex Injection.
The warning need not be perfect or complete. We are not concerned with what Glaxo could have included in the warning. The test is adequacy.
*40 Initially, we find, as a matter of law, that the written warning adequately informed the intermediary physician of the possibility, though rare, of a patient dying of a cardiac related event. The record clearly manifested that the physician was alerted to the adverse risks of coronary vasospasm. He was also cognizant of risks of related cardiac events, including myocardial infarction, for patients who did, and did not, have a history suggestive of coronary artery disease. The warning provided the physician with sufficient information to judge the risks to his patient of the adverse event suffered.
Notification of an actual Imitrex-related death would not have added information that the doctor needed or did not already have. The possibility of death, though "rare," was forecast. Mrs. Brown's own doctor, Dr. Girod, agreed that a life-threatening event includes the possibility of death.

GLAXO'S VERBAL REPRESENTATIONS
Having found the written warning to the doctor to be adequate, we must determine the effect of the verbal representations. Were the direct verbal representations sufficient to supersede or interdict the written warning to the doctor and cause the Browns to rely on the Glaxo verbal representations?
Glaxo's agent, Mr. Lefort, made sales presentations to health care professionals. The presentations to doctors and pharmacists were made using materials and information supplied by Glaxo. Mr. Lefort admitted that he customarily noted that chest pains were an Imitrex side effect. However, those pains were mostly mild and transient. He told his customers that although the pains could sometimes be "alarming," they were, for the most part, not cardiac in origin. Dr. Girod testified that Glaxo's agent characterized the chest pains experienced by users as "not cardiac in origin." Moreover, Mr. Brown testified that the same Glaxo agent, Mr. Lefort, made the following representations to Mr. Brown at the pharmacy:
"there would be ... chest tightness. This is a problem that would resolve itself spontaneously. It was not cardiac in origin because the drug was specific for the head for migraine headaches. [Mr. Lefort] presented it as an expected side effect. So people might be alarmed about it, but since it was not cardiac in origin they had nothing to worry about. Just tell them don't worry about it."
Under the particular facts in this record, the jury could have reasonably accepted Mr. Brown's version of the story. The jury could have reasonably concluded that the adequacy of Glaxo's written warning to the doctor was interdicted or superseded by the subsequent verbal representations made by Glaxo's agent directly to the pharmacist-husband, Mr. Brown, and that he shared those representations with his wife. The jury could have reasonably concluded that Glaxo's verbal representations diluted or confused the connection between "alarming" chest pains and cardiac dangers. The verbal representations may have lulled the Browns into a false sense of security concerning the sometimes "alarming" chest pains. When Mrs. Brown initially experienced persistent, mild, but sometimes "alarming" chest pains, she could have reasonably relied on Glaxo's verbal representations that the chest pains were not cardiac in nature; and, thus, nothing to worry about.
After a thorough review of the record, we find no manifest error in the jury's implicit factual findings, or a basis for reversal. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La.1993). Glaxo had no *41 duty to warn the consumer. However, Glaxo must take responsibility for any confusion over the cause of the chest pains caused by the verbal representation it chose to make. In the case of the Browns, we find that Glaxo's verbal representations interdicted or superseded the written warning to the doctor. By its own representations, Glaxo removed this case from the protection of the learned intermediary doctrine. The record provides reasonable support for the finding that Glaxo's warning to the Browns was inadequate under the particular facts of this case. Id. Without an adequate warning to the Browns, we find support for the jury's verdict that Imitrex was unreasonably dangerous to Mrs. Brown.

COMPARATIVE NEGLIGENCE
Having found the verbally qualified warning inadequate as to the Browns, we must determine whether Mrs. Brown acted negligently and incurred any liability under the specific facts of this case. Whether a duty is owed is a question of law. The particular facts determine the extent of the duty. Moore v. Safeway, Inc., 95-1552 (La.App. 1 Cir. 11/22/96), 700 So.2d 831, 846, writs denied, 97-2921, 97-3000 (La.2/6/98), 709 So.2d 735 & 744. If the actions of more than one party caused or contributed to the injury or death suffered, the percentage of fault must be apportioned. La. C.C. art. 2323 A. To decide these issues, we must infer the jury's probable analysis and factual findings from the record before us.
All the doctors, including Dr. Girod, testified that they would have immediately discontinued the use of Imitrex, if told of severe symptoms like Mrs. Brown's. For the jury to have found no negligence or liability by Dr. Girod, the jury must have believed that Mrs. Brown may have told him of side effects, but not of the increasing severity and duration of the pain, the vomiting, or her fear of Imitrex. By the end of the trial, the attorneys for the plaintiffs must also have believed that Mrs. Brown did not report the severe symptoms. Otherwise, the plaintiffs would not have asked the jury to excuse Dr. Girod from liability. On this record, we cannot say such a factual finding was clearly wrong. Stobart v. State, Department of Transportation and Development, 617 So.2d at 882.
As noted above, Mr. Brown was well aware of the consumer insert. Additionally, Mr. Brown admitted that he and his wife thoroughly reviewed all of the consumer information insert. The information provided to the consumer, pertinent to this case, advised that:
Some patients experience pain or tightness in the chest or throat when using Imitrex Injection. If this happens to you, then discuss it with your doctor before using any more Imitrex Injection. If the chest pain is severe or does not go away, call your doctor immediately.
. . .
If you feel unwell in any other way or have symptoms that you do not understand, you should contact your doctor immediately.
There is no dispute that, by September 25, 1993, Mrs. Brown realized that the chest pains were increasing in severity and duration, and she experienced vomiting on two different occasions shortly after taking the injection. From the verbal representations made to Mr. Brown, Mrs. Brown's initial "alarming" chest pains could reasonably have been accepted as "nothing to worry about." However, Mrs. Brown's side effects eventually moved beyond chest pains. Glaxo's verbal representations, about occasional "alarming chest pains," were not sufficient to relieve Mrs. Brown *42 of all responsibility for her health care. The increasing severity of the pain and the addition of vomiting were sufficient to instill in Mrs. Brown a "fear" of the drug; an admitted fear that she recorded in her journal.
A "reasonable" Imitrex user should have realized sometime before August 30, 1994, that the side effects had seriously changed in type and intensity. Such a realization, in light of the directives to consumers to notify the doctor of more severe symptoms, or even symptoms the user did not understand, placed a duty on any reasonable Imitrex user, under these conditions, to report the serious changes to her doctor. Mrs. Brown's knowledge of her symptoms, the warning representations made to her by her husband, and the consumer directives, placed such a duty on her. By not reporting the increasingly severe side effects, Mrs. Brown breached her duty. Thus, we agree with the jury that Mrs. Brown was negligent in her health care.
We do not agree with the jury finding that Mrs. Brown's negligence did not contribute to her injuries or death. However, the trial court's finding on causation is subject to the manifest error standard of review. Robling v. Allstate Insurance Company, 97-0582, p. 4 (La. App. 1 Cir. 4/8/98), 711 So.2d 780, 783.
It was undisputed at trial that reports of the serious side effects noted by Mrs. Brown in her diary would have resulted in discontinuation of Imitrex. Not one of the doctors that testified would have allowed Mrs. Brown to continue using Imitrex. Thus, Mrs. Brown's failure to report changes, in type and intensity of the symptoms, directly contributed to her injury and death. The jury concluded that she was negligent with regard to her medical treatment. However, the jury manifestly erred when it found that her negligence did not cause the adverse event of August 30, 1994.
In assessing the conduct of the parties, various factors may influence the degree of fault assigned. Watson v. State Farm Fire and Casualty Insurance Co., 469 So.2d 967, 974 (La.1985). Based on the diary entries documenting the adverse reactions she encountered, we find that Mrs. Brown had an awareness of the danger, but failed to advise her doctor. Thus, she increased the risk of a severe reaction. We note that there was no justification for failing to advise her doctor; there was no evidence Mrs. Brown lacked capacity; and there were numerous opportunities to advise her doctor of the adverse reactions.
In closing arguments, the plaintiffs told the jury that Dr. Girod should not be held liable. The jury agreed. Dr. Girod indicated that he would have discontinued the use of Imitrex, and would not have represcribed Imitrex a year later had he known of the severe reaction Mrs. Brown described in her journal in September 1993. The record is clear. If Mrs. Brown had advised Dr. Girod of her vomiting, as well as other stronger adverse reactions, Dr. Girod would have taken her off of the drug. However, she did not inform him of the stronger adverse reactions and the vomiting in September of 1993 and May of 1994.
The jury was manifestly erroneous in finding that her negligence was not the cause of her harm. Thus, we find the jury erred and reverse that finding. We find that Mrs. Brown's negligence proportionately combined with the negligent verbal representations of Glaxo to cause her injuries and subsequent death.
Having determined that the jury's allocation of fault was manifestly wrong, we must apportion fault accordingly. *43 See La. C.C.P. art. 2164; Watson v. State Farm Fire and Casualty Insurance, Co., 469 So.2d 967, 973 (La.1985). However, the allocation of fault may be adjusted only to the extent of lowering or raising it to the highest or lowest point respectively which is reasonably within the trial court's discretion. Clement v. Frey, 95-1119, p. 8 (La.1/16/96), 666 So.2d 607, 611.
Neither party presented evidence of whether the adverse event here was caused by the single injection on August 30, 1994, or resulted from long-term use of Imitrex. Mrs. Brown failed to report the change in intensity and type of side effects to her doctor. However, Glaxo provided the contradictory information that weakened the consumer warning and created the confusion over the nature and seriousness of the chest pains that led to the initial delay in reporting. We find that Mrs. Brown was no less than 30% at fault and no more than 50%. For these reasons, we attribute 30% to Mrs. Brown, and 70% of the fault to Glaxo.

LOSS OF ENJOYMENT OF LIFE
The trier of fact is afforded much discretion in fixing a general damage award. La. C.C. art. 2324.1; Youn v. Maritime Overseas Corp., 623 So.2d 1257, 1260-61 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Although both are categories of general damages, loss of enjoyment is a separate award from mental and physical pain and suffering. In re Medical Review Panel, 94-1661, p. 13 (La.App. 1 Cir 6/23/95), 657 So.2d 713, 722.
In this particular case, the jury made no award for physical and mental pain and suffering. Apparently, the jury found that Mrs. Brown was in a vegetative state and not sufficiently aware of her pain and suffering. However, the argument that a wife and mother in her early forties did not lose the enjoyment of her life for the almost two years she remained in a vegetative state cannot be seriously supported. We find no error in the jury's award of damages for Mrs. Brown's loss of enjoyment of life.
For these reasons, we reverse the jury's finding of no liability on the part of Mrs. Brown. We assess her fault as 30%, and Glaxo's as the remaining 70%. In all other respects, we affirm the judgment. The costs of the appeal are assessed to Glaxo.
REVERSED IN PART, AFFIRMED IN PART, AND RENDERED.