807 So.2d 983 (2002)
Jerome RABALAIS
v.
Ralph MASON, et al.
No. 01-CA-925.
Court of Appeal of Louisiana, Fifth Circuit.
January 15, 2002.
Roy Raspanti, and Bruce M. Danner, Metairie, LA, Attorney for Appellant.
Noel Cole Young, New Orleans, LA, Attorney for Appellee.
*984 Panel composed of Judges MARION F. EDWARDS, SUSAN M. CHEHARDY and WALTER J. ROTHSCHILD.
EDWARDS, Judge.
Plaintiff/appellant Jerome Rabalais appeals a judgment of the district court awarding him $8,421.00 in damages for injuries received in an vehicular accident. Defendant Roy Mason was the owner of a truck driven by defendant Troy Mason, which collided with the Rabalais vehicle. Mason was insured by defendant/appellee Allstate Insurance Company.
At trial, Allstate stipulated to the liability of its insured, and further stipulated that it provided liability coverage in the amount of $50,000.00. Rabalais stipulated that his damages would not exceed the policy limits, and Ralph and Troy Mason were dismissed from the lawsuit. Following trial on damages, the trial court determined that Mr. Rabalais proved his case by a preponderance of evidence, and awarded the amount of $8,421.00 plus legal interest from date of judicial demand. No reasons for judgment were given. Mr. Rabalais has appealed the judgment as inadequate.
At trial, the only testimony was that of Mr. Rabalais. He testified that at the time of the accident, which occurred on October 31, 1997, he was 62 years old, 6 feet 4 inches tall, and weighed approximately 315 pounds. At the time of the accident, he was employed by Pelican Plumbing Supply company as a part-time salesman and part-time counter man, at the rate of $7.95 per hour. He was also a licensed plumber and did "side work". Before the accident he had no problems with his back, legs or neck, and was able to hunt and fish.
Immediately after the accident, he was very shook up and went home. He testified that he had health insurance with Pelican; however, he quit the company immediately after the accident because he was "fed up" with them. He did not go to an emergency room right away because he had no insurance and thought he "could beat it." He does not like to go to doctors. He took some aspirin and rested in bed for three to four weeks. He felt that he was getting worse during that time, and consulted his attorney, who referred him to Dr. Edmond Landry.
He first saw Dr. Landry on January 28, 1998. Dr. Landry told him he would have to be treated for high blood pressure before he could see Mr. Rabalais again, and because he had no medical insurance, he was referred to the Veterans Administration Hospital (VA) for treatment for high blood pressure and high cholesterol. His first appointment at the VA was on February 20. There he was treated for hypertension, high cholesterol, and excess fluid. He took Aleve for arthritis in his neck. He mentioned problems in his back, neck and legs, but the physician told him that she was treating him for the other medical problems. He returned to see Dr. Landry in September, and his walking was getting worse. He could walk about two hundred yards before he had to rest. He was sent to therapy where he was put on a treadmill and given heat treatments and over-the-counter medications. He goes to therapy every two weeks.
Mr. Rabalais last saw Dr. Landry in the summer of 1999. He still had problems walking and standing up, and could not do the type of plumbing work he used to do. He cannot hunt or fish, but now he just wants to sit down and sleep. When he gets out of bed in the morning he has to hold on to something for a short time as he walks. He takes two Aleve tablets a day, and sometimes another at 3:00 a.m. when pain wakes him up.
By February 20, he had gone back doing some plumbing work. In September of *985 1998 he was driving and working for 30-40 hours a week. His neck problems are sometimes not as bad as at other times. It is the small of his back that hurts the most. The VA doctors told him that the problems in his back are related to degenerative arthritis.
The medical evidence admitted at trial included the deposition of Dr. Landry in lieu of testimony. Dr. Landry is an orthopedic surgeon who testified that when Mr. Rabalais came to him on January 28, 1998, he complained about neck and shoulder pain, and pulling pain in his left buttock. He denied any similar problems and the only medication he was taking were two aspirin when he was awakened during the night. Dr. Landry noted no muscle spasms, but there was tenderness over the back of the neck and at the lumbrosacral junction. X-rays revealed no evidence of fracture, but there was narrowing of the C5-6 and C6-7 disc spaces with anterior bridging osteophytes. There was slight narrowing of the L5-S1 disc space with grade 1 degenerative spondylolisthesis. There were degenerative changes present at the L4-5 and L5-S1 facet joints. There was evidence of degenerative arthritis of the neck, back, and knees, and at the time of the first visit, but Dr. Landry felt it was difficult to estimate the result of his injury because of the other medical conditions. At that time, Dr. Landry was most concerned about Mr. Rabalais's high blood pressure and peripheral edema. The physician felt that it was inappropriate to start any form of therapy for the orthopedic problems without having the medical problems addressed first.
Dr. Landry next saw Mr. Rabalais on September 9, 1998, after treatment for elevated blood pressure and high cholesterol. Mr. Rabalais told him he had been walking for exercise, and could walk a half mile before he had lower back pain and a tired feeling. After sitting for two or three minutes he could walk again. He has knee pain when walking which radiates to his hips. Because he had to sit a lot, Mr. Rabalais's son was helping him in his 30-40 hour work week as a plumber. He was given medication and Dr. Landry reviewed an MRI done previously. The MRI report showed significant degenerative changes in the spine, but no disc herniation. Dr. Landry opined that Mr. Rabalais had sustained injuries such as sprains and strains at the time of the accident. There was no evidence of any structural change on the MRI reports related to that trauma. Symptomatic treatment such as anti-inflammatory medication and exercise therapy would be appropriate.
On July 23, 1999, Mr. Rabalais returned complaining that he had difficulty walking a mile without resting 3 or 4 times, because of pain in his knees. He could still work, but could not be on his feet for long and could not bend, lift or stay in a crouched position. Dr. Landry stated that some of the decrease in flexion was related to Mr. Rabalais's weight. Dr. Landry still believed that Mr. Rabalais's complaints were related to the degenerative arthritis, and there was not identifiable trauma present. Based on his history and the diagnostic studies, Dr. Landry opined that the arthritis was asymptomatic prior to the accident, and that the soft tissue injury suffered in the accident caused symptomatic aggravation beyond recovery, on a permanent basis.
The hospital records from VA show that in addition to treatment for high blood pressure, Mr. Rabalais was given rehabilitation evaluation and physical therapy for back and leg pain. Clinic notes evidence that Mr. Rabalais complained of chronic lower back pain, adding that he: "had a car accident 2 years ago and his pain became worse since then."
*986 Allstate has stipulated to liability and has not appealed the judgment. There is no question that Mr. Rabalais suffered from a pre-existing degenerative arthritic condition. It is a settled rule of law that a defendant takes his victim as he finds him and is responsible for all natural and probable consequences of his tortious conduct. When the tortfeasor's conduct aggravates a pre-existing condition, the tortfeasor must compensate the victim for the full extent of the aggravation.[1] In finding that Mr. Rabalais proved his case by a preponderance of the evidence, the trial court evidently found that the pre-existing condition was aggravated by the accident. The only issue remaining before us is whether the award was adequate to compensate Mr. Rabalais for his damages.
The standard for the review of damage awards is whether, after an articulated analysis of the facts, this court finds that the trial judge abused his great discretion. This determination is made with consideration to the individual circumstances of the injured plaintiff. After an analysis of the facts and circumstances peculiar to the particular case and plaintiff, an appellate court may conclude that the award is inadequate. Only then is a resort to prior awards appropriate, and then for the purpose of determining the highest or lowest point which is reasonably within that discretion.[2]
Dr. Landry testified that Mr. Rabalais' symptoms are permanently aggravated beyond recovery. As a result of the accident, he is unable to stand for long periods, or walk a significant distance without stopping to rest. He cannot stoop or crouch, or lift heavy objects, and this inhibits his plumbing work. He is unable to sleep through the night due to pain, and unable to enjoy leisure activities such as hunting and fishing. The primary considerations in the assessment of damages are the severity and duration of the injured party's pain and suffering.[3] Our analysis of the effect of the injury on this particular plaintiff convinces us that the award granted by the trial court was inadequate. We have reviewed comparable cases involving aggravation of pre-existing arthritic or lumbar conditions.
An award of general damages in the amount of $55,000 was affirmed on appeal for a 59-year-old truck driver who suffered from an aggravation of a pre-existing arthritic condition and possible herniated disc.[4] The Third Circuit affirmed an award of $50,000.00 to a woman whose degenerative disc disease was aggravated by an accident based on testimony concerning effect injuries had on the plaintiff's day-to-day activities; she had suffered no previous back problems other than mild flare-ups of her arthritic condition prior to accident and had actively participated in family business activities, but because of accident and resulting disability, her participation had been considerably reduced.[5] An award of $52,000 was granted to a plaintiff who suffered arthritic changes aggravated *987 by the accident, and who could no longer fish, his favorite hobby, or hunt, and was less active because he could not sit for extended periods.[6] An award of $50,000 was affirmed for a plaintiff with a pre-existing asymptomatic degenerative back condition which could only be treated with activity restriction and medication.[7] Considering these cases, and the effect of the injury on Mr. Rabalais, we conclude that he is entitled to a damage award of $50,000.00.
For the foregoing reasons, the judgment of the trial court is amended to reflect that Mr. Rabalais is awarded the sum of $50,000.00 in general damages. In all other respects the judgment is affirmed.
AFFIRMED AS AMENDED.
NOTES
[1] LeBlanc v. Allstate Ins. Co. 00-1128 (La. App. 5th Cir.11/28/00), 772 So.2d 400, writ denied 2000-C-3522 (La.2/9/01), 785 So.2d 831, citing Perniciaro v. Brinch, 384 So.2d 392, 395 (La.1980); Lasha v. Olin Corp., 625 So.2d 1002, 1006 (La.1993).
[2] Hooker v. Super Products Corp., 98-1107 (La.App. 5th Cir.6/30/99), 751 So.2d 889, writ denied 99-2947 (La.12/17/99), 751 So.2d.884. (Citations omitted).
[3] Morris v. United Services Auto. Ass'n, 32,528 (La.App. 2nd Cir.2/18/00),756 So.2d 549.
[4] Sherlock v. Berry, 487 So.2d 555 (La.App. 4 Cir.1986) writ denied 489 So.2d 912 (La. 1986).
[5] Morris v. Highlands Ins. Co., 525 So.2d 125, (La.App. 3 Cir.1988).
[6] Gaines v. Daiichi Chuo Shipping (American), Inc., 95-1597 (La.App. 4th Cir.4/24/96), 673 So.2d 1192.
[7] Faul v. State, Dept. of Transp. and Development, 94-502 (La.App. 3rd Cir. 11/2/94), 649 So.2d 493.