818 So.2d 1021 (2002)
Kenneth E. TRUEMAN, et ux.
v.
CITY OF ALEXANDRIA.
No. 01-1130.
Court of Appeal of Louisiana, Third Circuit.
May 15, 2002.
Rehearing Denied July 10, 2002.
*1022 Eugene A. Ledet, Jr., Attorney at Law, Alexandria, LA, for Plaintiff/Appellant Kenneth E. Trueman.
Brandon Sues, Attorney at Law, Alexandria, LA, for Defendant/Appellee City of Alexandria.
(Court composed of ULYSSES GENE THIBODEAUX, BILLIE COLOMBARO WOODARD, MARC T. AMY, MICHAEL G. SULLIVAN, and ELIZABETH A. PICKETT, Judges).
PICKETT, J.

FACTS
Kenneth E. Trueman was leaving his dentist's office in the city of Alexandria on July 25, 1999. He stepped on a partially opened water meter box, caught his foot, and fell. As a result of the fall he sustained damage to his knee. He subsequently filed suit against the city.
Following a bench trial, the trial court awarded Mr. Trueman $50,000.00 in general damages and $1,796.77 in medical expenses. Mrs. Trueman was awarded $4,500 for loss of consortium. Mr. Trueman has appealed from the judgment of the trial court.

DISCUSSION
The appellant, Kenneth Trueman, alleges four assignments of error, as follows:
1. The trial court committed legal error in granting the motion to strike filed by the City of Alexandria relative to excerpts from the deposition of John Fritchie, M.D.
2. The trial court committed legal error in holding plaintiffs failed to carry their burden of proving the likelihood of a total knee replacement and the causal relationship of the surgery to the July 27, 1999 accident.
3. The trial court committed legal error in failing to award future general damages and medical expenses associated with a total knee replacement.
4. The trial court committed legal error in failing to award the full amount of medical expenses totaling $6,617.08 by affording the City of Alexandria adjustments by Medicare.
Because the first three assignments of error are related, they will be discussed together.
*1023 At the time of the accident, the appellant was 72-years-old. After the accident, he went to the emergency room, complaining of pain in his right knee and left arm. He was referred to an orthopedist, Dr. Fritchie, whom he saw the day after the fall. At that time his chief complaint was his arm. The appellant returned to see Dr. Fritchie six days later, now complaining more about his knee than his arm. Dr. Fritchie made x-rays and diagnosed a medial meniscus tear. Two weeks later, the appellant's condition had worsened. Dr. Fritchie performed an arthroscopy. He noted more arthritis in the knee than the x-rays had shown as well as the medial meniscus tear. Dr. Fritchie was of the opinion this injury was a result of the fall.
In connection with this litigation, the City of Alexandria referred the appellant to Dr. Gordon Mead for an evaluation. Dr. Mead issued a report unfavorable to the City, determining a complete knee replacement would be necessary. When the City received the report, it cancelled Dr. Mead's previously scheduled deposition. Neither party rescheduled the deposition. A copy of Dr. Mead's report was provided to the appellant's attorney. Counsel, in turn, gave the report to Dr. Fritchie who included the report in the appellant's medical file. At Dr. Fritchie's deposition, the appellant's attorney asked several questions regarding Dr. Mead's report.
At trial, when the deposition of Dr. Fritchie was introduced, the City objected to those portions of the testimony which related to Dr. Mead's report and requested they be stricken as hearsay. The trial court agreed and disregarded those portions of the deposition. His ruling, included in his written reasons for judgment, reads as follows:
The motion to strike is grounded in Code of Evidence Article 803. The motion was not acted upon at the trial by the court but taken under advisement. Plaintiff argues that the report is admissible under Art[s]. 702 and 703. The court is of the opinion that the report of Dr. Mead is hearsay under Art. 801. Further, the report is not an exception as provided under Art. 801. In addition, the report does not satisfy the requirements of Art. 703. As noted by defendant, Dr. Fritchie was asked to opine based upon the conclusions or opinions reached by Dr. Mead. Article 703 only allows an expert to base his opinion on the facts or data compiled by another expert, not the ultimate opinions or conclusions of the other expert. Accordingly, the court will strike that part of the deposition, and the testimony will not be considered in awarding damages.
The trial court went on to find that without the stricken testimony, the appellant could not meet his burden of proving the need for a knee replacement. He was, therefore, denied damages for that portion of the claim. This appeal followed.
"On appeal, a trial court's admission or exclusion of evidence is subject to an abuse of discretion review." Libersat v. J & K Trucking, 00-192 (La.App. 3 Cir. 10/12/00); 772 So.2d 173, writ denied 01-458 (La.4/12/01); 789 So.2d 598.
We agree that Dr. Mead's report, which was a part of the certified copy of the entirety of Mr. Trueman's medical records from Dr. Fritchie's office, is hearsay and was properly excluded by the trial court. The medical records were attached to, and made a part of, Dr. Fritchie's deposition. The appellant's argument that this report is part of the certified medical records from Dr. Fritchie's office and admissible pursuant to La.R.S. 13:3714 is misplaced. La.R.S. 13:3714 provides in its entirety:

*1024 § 3714. Charts or records of hospitals, other health care providers; admissibility of certified or attested copy
Whenever a certified copy of the chart or record of any hospital, signed by the administrator or the medical records librarian of the hospital in question, or a copy of a bill for services rendered, medical narrative, chart, or record of any other state health care provider, as defined by R.S. 40:1299.39(A)(1) and any other health care provider as defined in R.S. 40:1299.41(A)(1), certified or attested to by the state health care provider or the health care provider, is offered in evidence in any court of competent jurisdiction, it shall be received in evidence by such court as prima facie proof of its contents, provided that the party against whom the bills, medical narrative, chart, or record is sought to be used may summon and examine those making the original of the bills, medical narrative, chart, or record as witnesses under cross-examination.
This statute, the purpose of which is to save litigants the costs and difficulty of producing each of the people who treated a patient to testify, provides an exception to the hearsay rule. Morris v. Players Lake Charles, Inc., 99-1864 (La. App. 3 Cir. 4/5/00); 761 So.2d 27, writ denied 00-1743 (La.9/29/00); 770 So.2d 349. These statutes are to be strictly construed, as they are an exception to the hearsay rule, and all formalities must be followed. State v. Trahan, 332 So.2d 218 (La.1976).
We note that not only is Dr. Mead not affiliated with Mid State Orthopaedic and Sports Medicine Center, the clinic where Dr. Fritchie is employed, Dr. Fritchie neither referred the appellant to Dr. Mead nor consulted with Dr. Mead regarding his findings. In fact, Dr. Fritchie received Dr. Mead's report from the appellant's attorney, not Dr. Mead. We further note the form attached to the records and signed by the custodian of medical records for Mid State states, in pertinent part:
Pursuant to LRS 13:3715.1, I certify that the attached are true and complete (to the best of my knowledge) photocopies of Records of Mid State Orthopaedic and Sports Medicine Center, as requested in the case of:
PATIENT: Kenneth Trueman UNIT RECORD: 9480567
I further certify that .... the Records were prepared by the personnel of Mid State Orthopaedic and Sports Medicine Center staff, physicians or persons acting under the control of either in the ordinary course of business of the Clinic, or near the time of the act, condition or event.
It is clear Dr. Mead's report cannot be certified by the custodian of records of the Mid State Clinic, as the report was not prepared by a person acting under the control of the clinic. La.R.S. 13:3714 is an exception to the hearsay rule as applied to the maker of the record. Dr. Mead's report contained within the record, however, is clearly inadmissible hearsay as it does not meet the requirements of La.R.S. 13:3714.
We find, however, while properly excluding Dr. Mead's report, the trial court erred in striking those portions of Dr. Fritchie's testimony which referenced findings and/or conclusions of Dr. Mead which were reflected in that report.
La.Code Evid. art. 703 provides:
The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences *1025 upon the subject, the facts or data need not be admissible in evidence.
In the instant case, the testimony at issue is from the treating physician, not a consulting doctor or one merely testifying based upon a review of another doctor's records. The testimony, which was ultimately stricken form the record, is as follows:
Q. Assume for me that Mr. Trueman's complaints at that time were loss of motion of the right knee, weakness in the knee and a tendency for the knee to give way. Are those conditions or complaints consistent with the condition of this man's knee in your opinion?
A. Yes, sir.
Q. He also had complaints of pain "most of the time" in his right knee and the knee getting stiff after prolonged sitting. Are those complaints also consistent with the condition of this elderly gentleman's knee?
A. Yes, sir.
Q. Am I correct in understanding that your eventual diagnosis was preexisting degenerative arthritis of the right knee and a tear of the medial meniscus?
A. Yes, sir.
Q. Similar to Dr. Mead?
A. Yes, sir.
Q. You have already told us that you felt that the accident caused the meniscal tear. Do you agree with me, sir, that in addition to causing the meniscal tear, that the accident in all likelihood aggravated the preexisting osteoarthritis in the right knee?
A. Yes, sir.
Q. And do you agree that these two conditions are permanent in nature?
A. Yes, sir.
Q. Similar to Dr. Mead?
A. Yes, sir. I would pretty much agree withor I would be in complete agreement with his impression and recommendations.
Q. The last recommendation and finding of Dr. Mead is that in all likelihood, at some point Mr. Trueman will require a knee replacement for increasing his comfort and activity level. Do you also agree with that finding?
A. Yes, sir.
Q. And do you also agree that this accident was a contributing or aggravating factor to the preexisting osteoarthritis, necessitating the total knee arthroplasty?
A. Yes, sir.
* * * *
Q. Mr. Sues asked you quite a few questions dealing with possibilities. You do agree with me, sir, that in all probability, this gentleman sustained a meniscus tear and an aggravation of his preexisting degenerative arthritis as a result of a July 27th, 1999 accident; correct?
A. Dr. Mead probably phrased it the best, and yes, I would agree with that.
Q. Dr. Mead phrased that in all likelihood, he had a preexisting degenerative arthritis of the right knee and then had a tear of the medial meniscus at the time of this injury. You do agree with that; correct?
A. Yes, sir.
Q. Dr. Mead also phrased that this injury most likely accelerated the osteoarthritis in his right knee. You agree with that; correct?
A. Correct, yes, sir.
Q. Dr. Mead also phrased that he will most likely at some point require knee replacement for increasing his comfort *1026 and activity level. Do you agree with that?
A. Yes, sir.
Q. Dr. Mead also considered the condition permanent. Do you agree with that?
A. Yes, sir.
Q. You also agreed that the accident of July 27th, 1999 was a contributing or aggravating cause, necessitating this total knee replacement; correct?
A. Yes, sir.
In fact, Dr. Fritchie was not testifying as to an opinion formed based upon the opinions and conclusions of another expert. He testified as to his opinion based upon his own examination, findings, and treatments. In the course of that testimony, when asked by counsel, he compared his findings with those of Dr. Mead and ultimately it is clear he agreed with Dr. Mead's findings. His opinion, however, is clearly based upon his own findings and not strictly upon the opinions and conclusions of Dr. Mead. This testimony should not have been stricken and is properly considered in determining the appropriate amount of damages to be awarded.
The trial court found that, because Dr. Fritchie's testimony regarding the future necessity of a total knee replacement was stricken from the record, the appellant failed to carry its burden of proof on this issue and declined to award damages. We find the evidence to be admissible. Accordingly, we have reviewed that evidence and determined the evidence establishes the appellant will require a total knee replacement as a result of this injury. The appellant carried his burden of proof as to this issue.
Because we find the appellant proved the necessity of a total knee replacement, we must adjust the damages awarded accordingly. The evidence presented at trial by the appellant supports an award of $42,274.80 future medical costs for a knee replacement. We hereby amend the award by the trial court to reflect this increase in the award of damages. Additionally, because the appellant requires future medical procedures, we must consider an increase in the general damages award as the appellant is facing surgery and its recovery period. When reviewing the record as a whole, we do not find the trial court abused its discretion by awarding $50,000.00 for the injury involving the meniscal tear and aggravation of degenerative arthritis. When considering the evidence previously excluded which we now find to be admissible, we find $50,000.00 an inadequate sum to compensate the appellant for his future pain and suffering. Accordingly, we amend the award and increase it to $125,000.00 to fully and fairly compensate the appellant.
The final assignment of error concerns the amount of medical expenses awarded by the trial court. The trial court found the appellant incurred medical expenses in the amount of $6,617.08, but awarded only $1,796.77, finding that to be the amount for which the appellant is responsible. The trial court found Medicare paid the difference of $4,820.31 and declined to grant an award for what was paid by Medicare.
In Brannon v. Shelter Mut. Ins. Co., 520 So.2d 984 (La.App. 3 Cir.1987), we held the collateral source rule applies to Medicare payments. We find the appellant's argument clearly supported by the jurisprudence and order the award for medical expenses increased to $6,617.08.

CONCLUSION
We find Dr. Mead's report properly excluded, but that Dr. Fritchie's testimony was improperly stricken. The appellant has carried his burden of proving future *1027 medical expenses in the amount of $42,274.80 and the judgment is amended to reflect that award. Additionally we hereby increase the award for general damages from $50,000.00 to $125,000.00 and increase the award for medical expenses to $6,617.08. The appellee is cast with the costs of these proceedings.
AFFIRMED AS AMENDED.
AMY, J., dissents in part and would affirm the judgment of the trial court in full.