892 So.2d 765 (2005)
Lenny Grace HENRY, Plaintiff-Appellant,
v.
Jennifer Baldridge WILLIAMS, et al, Defendant-Appellees.
No. 39,318-CA.
Court of Appeal of Louisiana, Second Circuit.
January 26, 2005.
*766 Johnson & Placke, L.L.P., by Allan L. Placke, West Monroe, for Appellant.
Hudson, Potts & Bernstein, L.L.P., by Gordon L. James, Monroe, for Appellees.
Before CARAWAY, MOORE and LOLLEY, JJ.
MOORE, J.
The plaintiff, Grace Henry, appeals a jury verdict that found her 25% at fault and awarded general damages of $30,412.39 for a fall that occurred during gait training at Lincoln General Hospital with a physical therapist assistant trainee, Jennifer Williams. For the reasons expressed, we amend and affirm.

*767 Factual Background

Ms. Henry, a 69-year-old osteoarthritis patient, had a right knee replacement at Lincoln General on June 8, 1999. Her surgeon, Dr. James Findley, testified that the surgery went well and he prescribed physical therapy while she was at the hospital. The therapy provider was Ruston Outpatient Physical Therapy ("Ruston Outpatient"). Ms. Henry's case was assigned to a licensed physical therapist, Rebecca Sherwin, but Ms. Sherwin delegated the actual therapy sessions to Jennifer Williams ("Jennifer"), who was training to become a physical therapist assistant. At the time, Jennifer had completed one year of an associate's degree at Bossier Parish Community College and a four-week rotation at Bernice Rehabilitation before starting at Ruston Outpatient. By all accounts, the physical therapy sessions were beneficial; Ms. Henry progressed to "standby assist" and had walked 200 feet on a flat surface with a rolling walker. Ms. Henry was scheduled for discharge on June 22.
Ms. Sherwin learned that Ms. Henry's home in Dubach had a single step at the front door. She therefore directed Jennifer to gait train Ms. Henry to negotiate a single step. Although there was a two-step device inside the physical therapy department at the hospital, Jennifer decided to gait train her on a curb outside, and did so the morning she was scheduled to leave the hospital. Without first describing what they would do at the curb, Jennifer took Ms. Henry out the door, down a sidewalk and to the curb, using a flat walker. She set the walker to Ms. Henry's left, telling her to hold the walker with her left hand.
Jennifer testified that she then walked behind Ms. Henry, intending to move to her right and let Ms. Henry grip her arm with her right hand, but before she could get in position, Ms. Henry suddenly stepped off the curb and fell. Ms. Henry testified that Jennifer stood behind her at the curb and said, "I'm trying to figure out how to tell you to do it." Ms. Henry waited and got no instructions, so she took a step: "I did something wrong, I fell." She landed on the curb and rolled on her back, badly reinjuring her right knee.
Dr. Findley testified that the fall reopened 80% of the original surgical incision and tore Ms. Henry's quadriceps tendon. He immediately performed surgery to repair the tendon and sent her to a different physical therapist on June 25. He called her rehabilitation slow and difficult, but discharged her from therapy by August 11. He described her recovery as excellent; she lost only a 5 extension in the knee and suffered no permanent disability.
In September 2001, a medical review panel of three physical therapists found the evidence did not support the conclusion that either Jennifer or Ms. Sherwin failed to meet the applicable standard of care in their treatment of Ms. Henry.
In November 2001, Ms. Henry filed this suit against Jennifer and Ms. Sherwin; their employer, The Green Clinic of Ruston, d/b/a Ruston Outpatient; their insurer, CNA Insurance Company; and Lincoln General Hospital. Lincoln General was dismissed by summary judgment which has not been appealed.

Summary of Trial Evidence
Jury trial was held in September 2003. Ms. Henry presented the expert testimony of Scott Davis, a certified physical therapist from West Virginia. He testified that Jennifer breached the standard of care of physical therapists by not adequately instructing the patient, verbally and visually, what to do before they reached the curb; being out of position to catch the patient in case of a fall; and failing to use the "gait *768 belt" properly to guard against her falling. He also testified that Ms. Sherwin breached the standard of care by allowing Jennifer to decide how to gait train the patient on steps, and allowing her to perform gait training independently. He testified that the step device inside the building could have been used. He concluded that had Ms. Sherwin and Jennifer observed the standard of care, the fall could have been prevented or the injuries reduced.
Ms. Henry also introduced the variance report (accident report) prepared by Lincoln General, which recited that Jennifer failed to provide initial training and education before taking her out to the curb, and should have used another training method. The variance report assigned no fault to Ms. Henry. Further, the "nurses' interdisciplinary care plan" in Lincoln General's records noted that Ms. Henry was diabetic, obese, had gout and a "communications impairment," and these factors placed her at a high risk of falling down. Ms. Henry also showed that like other physical therapy students, Jennifer kept a progress manual called a "Blue Max," which prior to this incident had been marked "competent" in gait training; afterwards, however, Ms. Sherwin edited this to "needs more experience." (Jennifer had since discarded her Blue Max.) The parties stipulated that after the accident, Ms. Henry incurred medical expenses of $24,587.61, paid by Medicare.
For the defendants, Brett Rachal, director of physical medicine at St. Francis Medical Center in Monroe, testified that Jennifer's acts  using a curb instead of a step, doing so with only one physical therapist, placing the walker to the patient's side before walking behind the patient  all met the standard of care. He disputed Mr. Davis's conclusions, but conceded that Jennifer should have described or demonstrated the stepping process before setting the patient on the curb. He also admitted that had Jennifer simply told Ms. Henry not to move, the accident likely would have been averted.
Ms. Sherwin and Ruston Outpatient's other physical therapist, Mr. Rice, agreed that Ms. Henry suffered from all the afflictions listed in the nurses' interdisciplinary care plan, but said that document was written shortly after surgery; by June 22, Ms. Henry had progressed to "standby assist," the "last level of care," and they no longer considered her at great risk of falling. Mr. Rice added that although he signed the variance report, he made no finding that anyone had breached the standard of care.
Ms. Sherwin testified that in the course of therapy, Ms. Henry had never demonstrated any "impulsive behavior." Jennifer testified that the accident happened because Ms. Henry was "impulsive" and took a step before being instructed to do so. She also testified that she had put the gait belt on Ms. Henry, but because the patient was on standby assist she did not hold it.
In response to special interrogatories, the jury found the care and treatment provided by Ruston Outpatient, Ms. Sherwin and Jennifer was negligent, fell below the standard of care, and caused injury that Ms. Henry would not otherwise have incurred; but Ms. Henry was also negligent or at fault in connection with her accident and this caused or contributed to her injury. The jury allocated fault 25% to Ms. Henry and 75% to the defendants, and awarded damages as follows:

 (a) Pain and suffering $10,412.39
 Mental anguish and distress and/or
 (b) loss of enjoyment of life 10,000.00
 (c) Past disability 10,000.00
 (d) Medical expenses (Medicare lien) 24,587.61
 ___________
 TOTAL: $55,000.00

The district court denied Ms. Henry's motion for JNOV or new trial and rendered *769 judgment in accord with the verdict. Ms. Henry has appealed, raising two assignments of error.

Discussion: Allocation of Fault
By her first assignment of error, Ms. Henry urges the jury erred in assessing her 25% of the fault in the fall that occurred during gait training by a student physical therapist at Lincoln General. She argues that various health factors  osteoarthritis, diabetes, gout, obesity  placed her at a greater risk for falls; with this knowledge, Ms. Sherwin should not have let Jennifer gait train her unsupervised. She also cites Mr. Davis's enumeration of things Jennifer did wrong. She contends that a patient's weakened condition, which might predispose her to fall, is not a factor in proving her fault. Delaune v. Medical Center of Baton Rouge, 95-1190 (La.App. 1 Cir. 10/25/96), 683 So.2d 859, writs denied, 97-0218 (La.3/21/97), 691 So.2d 84; Acosta v. Pendleton Mem. Methodist Hosp., 545 So.2d 1053 (La.App. 4 Cir.), writs denied, 551 So.2d 637, 638 (1989). She contends that she was not comparatively negligent, as the only cause of her injury was the defendants' breach of the standard of care, especially Jennifer's failure to instruct or demonstrate the stepping motion or instruct her to stay in place. She concedes the patient was found 25% at fault in Rauch v. Schiavi, 00-0160 (La.App. 5 Cir. 10/18/00), 772 So.2d 749, writs denied, XXXX-XXXX, 3472 (La.2/16/01), 786 So.2d 102, but urges that Mr. Rauch intentionally disobeyed doctors' orders to use crutches; by contrast, Ms. Henry could not disobey an order she never received.
The defendants submit that the verdict is not plainly wrong, citing numerous cases in which patients have been found at fault for their own injuries. Brown v. Glaxo, Inc., 99-1531 (La.App. 1 Cir. 11/15/00), 790 So.2d 35, writs denied, XXXX-XXXX, XXXX-XXXX (La.2/9/01), 785 So.2d 827, 832; Coleman v. Christian Home Health Care, 99-2948 (La.App. 4 Cir. 4/11/01), 786 So.2d 819. They also contend that the evidence to support each of Ms. Henry's claims of negligence was either "flatly contradicted" or "vigorously disputed" at trial, thus the jury could not have been plainly wrong. They urge that Austin v. St. Charles Gen'l Hosp., 587 So.2d 742 (La.App. 4 Cir.), writ denied, 590 So.2d 80 (1991), is apposite and supports the 25% allocation of fault.
The conduct of physical therapists does not fall under the Medical Malpractice Act. Pontiff v. Pecot & Associates Rehabilitation & Physical Therapy Serv., XXXX-XXXX (La.App. 3 Cir. 1/31/01), 780 So.2d 478. As in any negligence action, a patient alleging physical therapist malpractice must prove that the therapist owed a duty to protect against the risk involved, that the therapist breached that duty, that the patient suffered an injury, and that the therapist's actions were a substantial cause in fact of the injury. Hunter v. Bossier Medical Center, 31,026 (La.App. 2 Cir. 9/25/98), 718 So.2d 636; Pontiff v. Pecot & Associates, supra.
The resolution of whether alleged malpractice constitutes negligence as well as the assessment of factual conflicts, including those involving the contradictory testimony of expert witnesses, lies within the province of the trier of fact. Martin v. East Jefferson Gen'l Hosp., 582 So.2d 1272 (La.1991); Hunter v. Bossier Medical Center, supra. The jury's conclusions are entitled to great deference and will not be disturbed on review unless found to be manifestly erroneous or clearly wrong. Stobart v. State, 617 So.2d 880, 882 (La.1993).
A patient asserting malpractice may be comparatively negligent. La. C.C. art. 2323; Rauch v. Schiavi, supra. In *770 assessing the parties' degrees of fault, courts look to the nature of their conduct, including:
(1) whether the conduct resulted from inadvertence or involved an awareness of the danger, (2) how great a risk was created by the conduct, (3) the significance of what was sought by the conduct, (4) the capacities of the actor, whether superior or inferior, and (5) any extenuating circumstances which might require the actor to proceed in haste, without proper thought.
Watson v. State Farm Fire & Cas., 469 So.2d 967 (La.1985). After the appellate court finds a clearly wrong apportionment of fault, it should adjust the award, but only to the extent of lowering (or raising) it to the highest (or lowest) point respectively within the trial court's discretion. Clement v. Frey, 95-1119 (La.1/16/96, 666 So.2d 607); Gladney v. Sneed, 32,107 (La.App. 2 Cir. 9/16/99), 742 So.2d 642, writ denied, 99-2930 (La.1/14/00), 753 So.2d 215.
We have closely reviewed the record for evidence of comparative fault. Jennifer testified that in the short span of time that she circled behind Ms. Henry, moving from her left to right side, Ms. Henry unexpectedly stepped off the curb. In addition, both Jennifer and Ms. Sherwin said Ms. Henry was not given to impulsive actions. This is testimony which the jury obviously believed and supports the finding of some comparative fault on Ms. Henry's part.
The Watson factors, however, show that an allocation of 25% fault is plainly wrong, as the vast majority of fault must lie with the defendants. The cases of Austin v. St. Charles Gen'l Hosp. or Rauch v. Schiavi, supra, do not support or mandate the jury's 25% finding. The plaintiff in Austin was trying to get down from an x-ray table and into a wheelchair when she fell to her knees, reinjuring her back. The opinion referred to "conflicting evidence" as to precisely how she fell, but did not elaborate as neither party challenged the 25% assessment of plaintiff fault. In Rauch, shortly after having a compression plate surgically installed in his thigh, the plaintiff failed to use his crutches; participating in his daughter's wedding, he walked her down the aisle, fell and reinjured his leg. The court of appeal affirmed the district judge's assessment of 25% fault, noting an intentional disregard of doctor's orders. Ms. Henry's conduct was neither as protracted nor determined as Mr. Rauch's.
Jennifer and Ms. Sherwin knew the risk of a fall and reinjury to a patient like Ms. Henry; the whole purpose of physical therapy was to avoid precisely this risk, giving the defendants' conduct heightened significance. Most importantly, the physical therapist was in a superior position to prevent the harm by telling the patient not to move until instructed, or by using the more controlled, indoor stepping device. By contrast, Ms. Henry's conduct seems inadvertent; however, her history of good cooperation with Jennifer may have justified, to a small extent, the defendants' assumption that she would not take a step until instructed to do so. On this record, we find that the greatest allocation of fault which may be charged to Ms. Henry is 10%. The judgment will be amended accordingly.

General Damages
By her second assignment, Ms. Henry urges the jury's award of $30,412 in general damages was abusively low for a ruptured quadriceps tendon, a major injury that required immediate surgery, hospitalization at Lincoln General and North Louisiana Rehabilitation Hospital for six weeks, and treatment by home health for another four to six weeks. She contends that accidents necessitating knee replacements *771 usually merit damages of $100,000 to $125,000. Trueman v. City of Alexandria, XXXX-XXXX (La.App. 3 Cir. 5/15/02), 818 So.2d 1021, writ granted, 2002-2166 (La.11/15/02), 829 So.2d 410 (no disposition shown); Adams v. Department of Transp. and Development, 536 So.2d 476 (La.App. 1 Cir.1988); Crooks v. National Union Fire Ins. Co., 620 So.2d 421 (La.App. 3 Cir.), writs denied, 629 So.2d 391, 392 (1993). She also submits that the stipulated special damages of $24,567.41 represented only the Medicare lien; her actual medical expenses exceeded $50,000, thus warranting a much higher award of general damages. In support she cites Green v. K-Mart Corp., 2003-2495 (La.5/25/04), 874 So.2d 838.
The defendants urge the jury did not abuse its great discretion in fixing general damages. La. C.C. art. 2324.1. They argue that the plaintiffs in Trueman, Adams and Crooks had no pre-existing conditions, so their injuries are not truly comparable. Instead, the defendants cite Shaw v. Russell, 26,618 (La.App. 2 Cir. 3/1/95), 652 So.2d 133, Broussard v. Razden, 98-2576 (La.App. 1 Cir. 12/28/99), 763 So.2d 644, and Rabalais v. Mason, 01-925 (La.App. 5 Cir. 1/15/02), 807 So.2d 983, writ denied, XXXX-XXXX (La.4/19/02), 813 So.2d 1093, as more apposite and supporting the jury's award of general damages.
In the assessment of damages in cases of offenses, quasi offenses and quasi contracts, much discretion must be left to the judge or jury. La. C.C. art. 2324.1. The discretion vested in the trier of fact is great, even vast, so that an appellate court should rarely disturb an award of general damages. Hae Woo Youn v. Maritime Overseas Corp., 623 So.2d 1257 (La.1993), cert. denied, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). The appellate court's role in reviewing general damages is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. Wainwright v. Fontenot, XXXX-XXXX (La.10/17/00), 774 So.2d 70. Only after finding that the record supports that the lower court abused its much discretion can the appellate court disturb the award, and then only to the extent of lowering (or raising) it to the highest (or lowest) point which is reasonably within the discretion afforded that court. Id.; Coco v. Winston Indus. Inc., 341 So.2d 332 (La.1977); Sepulvado v. Turner, 37,912 (La.App. 2 Cir. 12/10/03), 862 So.2d 457.
As a result of her fall, Ms. Henry reopened the prior surgical incision, ruptured her quadriceps tendon and bled profusely. She had emergency surgery, followed by three days at Lincoln General and over a month at a rehab hospital; Dr. Findley doctor called her recovery "difficult." Her daughter-in-law testified that during this time, Ms. Henry was depressed and cried often. By mid-December, nearly six months after the accident, Dr. Findley felt she had a good range of motion and no permanent disability. Although her recovery was "excellent," Ms. Henry underwent emergency major surgery just two weeks after another major surgery. She suffered a serious setback when she should have anticipated greater mobility and less pain. Her despondency at the situation is uncontradicted. In light of her physical pain, disability and mental anguish, we are constrained to say that the jury abused its discretion in awarding only $30,412 in general damages.
Most of the jurisprudence cited in brief is not helpful. The cases of Adams and Trueman, supra, with awards of $125,000, are not truly comparable because those plaintiffs suffered greater trauma and required complete knee replacements. *772 The cases of Dawson v. City of Bogalusa, 95-0824 (La.App. 1 Cir. 12/15/95), 669 So.2d 451, and Crooks, supra, in which the courts of appeal entered de novo awards of $110,000 and $100,000 respectively, are somewhat more apposite, in that those plaintiffs had pre-existing conditions similar to Ms. Henry's, but they had less pre-accident disability and required future knee replacements. At the other end, the cases of Broussard and Shaw, supra, with awards of $14,000 and $15,000 respectively, involved much less intrusive arthroscopic procedures and shorter recovery periods.
Although we are unaware of any Louisiana cases involving a knee replacement patient who then suffered a ruptured tendon, several cases have involved significant leg and knee injuries yielding general damages of $40,000 to $55,000. Zappala v. Home Depot, 94-225 (La.App. 5 Cir. 11/16/94), 646 So.2d 1162; McHale v. Schwegmann Bros. Giant Super Markets Inc., 97-788 (La.App. 5 Cir. 5/27/98), 712 So.2d 293, amended on other grounds, (La.App. 5 Cir. 11/23/98), 722 So.2d 328; Farrell v. Pierre, 02-1136 (La.App. 5 Cir. 4/8/03), 846 So.2d 49; Rabalais v. Mason, supra. In addition to a painful fall, prolonged hospitalization and difficult recovery, Ms. Henry suffered from depression and despondency. On this record, the lowest reasonable amount for the elements of pain and suffering, mental anguish and disability is $65,000. The judgment will be amended accordingly.

Conclusion
For the reasons expressed, the judgment is affirmed insofar as it found Ms. Henry to be comparatively at fault in her accident and awarded special damages of $24,587.61. The judgment is amended, however, to reduce her degree of fault to 10%, and to increase the general damages to $65,000. Appellate costs charged to the defendants, Jennifer Baldridge Williams, Rebecca Elizabeth Sherwin, The Green Clinic d/b/a Ruston Outpatient Physical Therapy Services, and CNA Insurance Company.
AMENDED AND AFFIRMED.